Allen SAMBO, Appellee,

v.

CITY OF MITCHELL and its Police Department, Appellant,

and

S.D. Dept. of Labor, Div. of Labor and Management, Respondent.

No. 15690.

Supreme Court of South Dakota.

Considered on Briefs Sept. 1, 1987.

Decided Aug. 10, 1988.

---

Harry H. Smith of Smith & Smith, Sioux City, Iowa, for appellee.

Dennis Maloney of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for appellant.

Carl J. Koch, Mitchell, for appellant.

TALBOTT, Circuit Judge.

City of Mitchell (City), a municipal corporation of the State of South Dakota, appeals a trial court judgment which reversed the decision of the Department of Labor (Department) which held the dismissal of Allen Sambo (Grievant) proper. The trial court directed the reinstatement of Grievant to his position with City. We affirm the trial court.

Both the trial court and Department found the facts not to be in serious dispute. Grievant began working for City's police department as a full-time police officer in August 1981. On July 5, 1985, he was working the 4:00 p.m. to 12:00 a.m. shift. At approximately 10:30 p.m. a local citizen dropped off a stray dog and Grievant was asked by his supervisor, Sgt. Smith, to handle the situation. At approximately 11:30 p.m., upon completion of some paperwork, Grievant attempted to call the telephone number given on the dog's collar. Intending to return to patrol duties, Grievant wrote the telephone number on a piece of paper, handed it to Sgt. Smith, and suggested that Sgt. Smith continue the contact effort. Sgt. Smith declined, saying that enough attempts had been made. Grievant suggested the dog catcher be called in. Since that person was not on duty, Grievant suggested taking the dog to the dog pound in the dog catcher's vehicle, but Sgt. Smith said Grievant should use his own patrol car. Grievant responded by stating, "You don't have the authority, it's going to take the Captain or the Chief." Sgt. Smith said, "What?," and Grievant gave the same response. Contacted by radio to telephone in to the office, Captain Royston told Grievant to take the dog to the pound in the patrol car and Grievant complied.

On July 15, 1985, City's Chief of Police handed Grievant a letter of termination giving as reasons for termination: 1) refusal to follow a lawful work order of your immediate supervisor; and 2) gross insubordination. Reference was made to attached findings and conclusions. Number 2 of the conclusions stated:

Officer Sambo's clear refusal to follow the directive of the Sergeant on duty, said Sergeant being his immediate supervisor, upon the circumstances above stated, constitutes gross insubordination.

In this dismissal no mention was made that other matters in Grievant's personnel file were being considered.

Although not a part of this appeal record, it appears to be conceded that City's common council heard and considered Grievant's position and affirmed the dismissal action taken by its Chief of Police.

Grievant filed a grievance with Department. City filed its answer which listed dismissal justifications as 1) gross insubordination, and 2) refusal to follow and carry out a work order of an immediate supervisor. The answer filed by the Chief of Police also stated that Grievant's prior work record showed a tendency of resistance to supervisory authority and attached a December 2, 1983, incident and an April 19, 1984, incident. Over Grievant's strenuous objection, Department admitted into evidence, and considered, evidence of these prior incidents.

Department found and held that the conduct of July 5, 1985, did not constitute "gross insubordination." It did hold, however, that the three incidents, taken together, constituted "a pattern of insubordinate behavior," and that the Chief of Police's decision to terminate was based, in large part, upon the Grievant's prior disciplinary problems.

At all times pertinent to the facts of this case, City, for its police department, had in place a negotiated agreement with General Drivers and Helpers Union, Local 749. Grievant was a union member.

As applicable to the facts of this case, that agreement contained the following provision:

## ARTICLE 24

### DISCHARGE OR SUSPENSIONS

The Employer shall not discharge, suspend nor discipline any employee without just cause, but in respect to discharge shall give at least one (1) warning notice

of a complaint against such employee to the employee in writing and copy of the same to the Union, except that no warning notice need be given to an employee before he is discharged or otherwise disciplined if the cause of such discharge is:

(1) Dishonesty.

(2) Drinking of, or under the influence of alcoholic beverage or narcotics during the work day.

(3) Personal possession or use of illegal drugs, marijuana or L.S.D.

(4) Recklessness resulting in a serious accident while on duty.

(5) Failure to report an accident or criminal incident while on duty.

(6) Gross insubordination.

It is understood that there are other offenses of extreme seriousness that an employee will be discharged for without a warning letter. Depending upon the circumstances and upon just cause, a lessor [sic] discipline to include demotion, suspension, or any other appropriate disciplinary action, short of discharge, may in the discretion of the department be implemented. It is further understood that a warning notice shall mean that further disciplinary action up to and including suspension or dismissal may occur if the condition causing the issuance of the warning letter is repeated during the effective time of the warning notice.

The warning notice as herein provided shall be given to the employee with a copy to the Union within ten (10) days of said complaint or within ten (10) days of knowledge of said complaint and shall not remain in effect for a period of more than nine (9) months from date of said warning notice. The conditions of a warning notice shall be included in all written disciplinary actions except a reprimand. The City shall be allowed reasonable time to investigate offenses of a criminal nature that may require disciplinary action prior to the initiation of disciplinary proceedings and in such circumstances the time limits for initiating disciplinary action shall not apply.

Discharge must be by proper written notice to the employee and the Local Union. Any employee may request an investigation of his discharge.

There were two means City could employ to discharge Grievant. If Grievant had committed one of the six enumerated serious offenses, or had his behavior been an "offense of extreme seriousness" (the catch-all clause), City would have been justified in discharging Grievant in the manner it did, i.e. without a warning letter. The City would also have been justified in discharging Grievant if he had received a previous warning letter and "if the condition causing the issuance of the warning letter is repeated during the effective time of the warning notice."

Our scope of review is determined by the provisions of SDCL 1–26–36 which was recently carefully considered in *Permann v. Dept. of Labor*, 411 N.W.2d 113, 117 (S.D. 1987), where, after noting some earlier decisional inconsistencies, a unanimous court wrote:

> Common sense dictates which standards apply to the different matters reviewed. The agency, after holding a hearing and listening to witnesses, is in a much better position to find facts than we are on appeal. On questions of law, however, it is well within our province to interpret statutes without any assistance from the administrative agency. It is well settled that conclusions of law made by a trial court are given no deference by this court on appeal, and lacking special circumstances, we see no reason to give deference to agency conclusions of law.

The trial court gave great weight to the findings made by Department as required by SDCL 1–26–36. In its own findings the trial court affirmed Department's finding that the incident of July 5, 1985, did not constitute "gross insubordination" and hence that claim of City would not justify Grievant's dismissal. City did not appeal this finding of the Department, so it is binding upon it.

The trial court specifically found that Department had made an error of law when it permitted, over objection, City to establish a pattern of insubordinate behavior by introducing evidence of a letter of

reprimand dated December 2, 1983, (relating to Grievant's failure to conduct a full-scale state accident report) and a letter of warning dated April 19, 1984, (relating to Grievant's failure to follow standard procedure pertaining to uniform traffic citations and inappropriate behavior related thereto). The union agreement clearly provided that such warning notices "shall not remain in effect for a period of more than nine (9) months from date of said warning notice."

We affirm the trial court in its holding that the Department erred in permitting the City to use the prior warning letters. Both were more than nine (9) months old as of the date of the instant grievance, July 5, 1985, and had in effect expired. The City could not use these prior warning letters to enhance the incident of July 5, 1985.

Grievant strongly objected to the admissibility of the prior warning letters on the grounds of relevancy and being contrary to the specific contract provisions. We note that Grievant's dismissal letter only mentioned "gross insubordination." In a subsequent letter to the Union (and not to Grievant) the Chief of Police, under date of July 22, 1985, expressed to the Union representative that the termination notice of Grievant should be amended to include "past similar incidents," but no such amendment was effected in this record. When City filed its formal answer to Department, it restated the grounds of "gross insubordination," and advised that Grievant's work record included incidents of a similar nature, referring to incidents of December 2, 1983, and April 19, 1984. City made no claim that these prior incidents justified dismissal, only that they were indicative of attitudes and tendencies that were inappropriate and not suitable for a person engaged in employment as a police officer. The contract provided that discharge must be by proper written notice to the employee and the local union.

In *Deuter v. South Dakota Highway Patrol,* 330 N.W.2d 533, 536 (S.D.1983), we held in part:

Under the Fourteenth Amendment to the United States Constitution, an individual is entitled to due process of law before his life, liberty, or property is taken away by the government. When the Highway Patrol discharges an employee for reasons such as listed herein, that employee is entitled to a due process hearing to contest the allegations made against him and clear his reputation. (Citations omitted).

With more specificity, the supreme court of our sister state Nebraska, in *Appeal of Bonnett,* 216 Neb. 587, 344 N.W.2d 657, 659 (1984) wrote:

To satisfy the requirement of due process, a notice in proceedings before an administrative agency or tribunal, such as the civil service commission in the present case, must reasonably provide information regarding the accusation levied.

Charges in administrative proceedings must be specific enough' to allow a party to prepare a defense, but the charges need not be drawn with the same refinements, strictness, exactitude, and subtleties as pleadings for judicial proceedings. (Citations omitted).

In *Hill v. Gerber,* 217 Neb. 670, 350 N.W.2d 545, 548 (1984), the Nebraska Supreme Court wrote:

One cannot be charged with violating employment rules in one manner, and when the proof fails, be discharged because of the violation of an unspecific charge.

City was permitted to obtain Grievant's discharge when the Department considered evidence not relevant according to the terms of the negotiated labor contract between City and the Union. We, therefore, affirm the decision of the circuit court of Davison County, South Dakota.

MORGAN, HENDERSON, SABERS and MILLER, JJ., concur.

TALBOTT, Circuit Judge, sitting for WUEST, Chief Justice, disqualified.