David STRAIN, Plaintiff and Appellant,

v.

**RAPID CITY SCHOOL BOARD FOR RAPID CITY AREA SCHOOL DISTRICT, Defendant and Appellee.**

No. 16405.

Supreme Court of South Dakota.

Argued March 22, 1989.

Decided Oct. 11, 1989.

TUCKER, Circuit Judge.

## ACTION

This is an appeal from a circuit court judgment affirming the Rapid City School Board's (Board) dismissal of David Strain (Strain). Strain appeals this judgment. We affirm.

## FACTS

On May 7, 1986, A.S., a sophomore student at Central High School in Rapid City, was contacted by a school counselor about attendance problems. The following morning, A.S., at the request of her parents, came in to visit the counselor. A.S. advised the counselor that her mother had been working overtime and consequently A.S. was not getting enough attention from her. Later that afternoon, A.S. came back and told the counselor that A.S. had to tell somebody that something was going on in her life that she could not handle. A.S. stated that she did not know whether to trust the counselor because she did not want anybody to know what she had to tell.

A.S. told the counselor that around November of 1985, Strain asked her and a friend to help him in the computer room and they did so. Soon after that Strain would put his hand on her knee. Although A.S. thought he was being overly friendly, it did not bother her. A.S. said that after a while Strain touched her in other places, including her breasts. One time Strain started to unbutton her top, but another teacher came along and A.S. hurriedly buttoned it up. On another occasion, Strain exposed himself, grabbed her hand and put it on his penis.

At the time of this conversation, A.S. asked the counselor to confront Strain so that he would know someone else knew, and maybe he would stop. A.S. asked the counselor not to tell anyone else, since A.S. did not want Strain to lose his job. That evening the counselor properly reported her conversation with A.S. to the Central High School principal.

The following morning, the principal had A.S. come into his office and relate the entire story. This conversation was tape-

Wayne F. Gilbert of Banks, Johnson, Johnson, Colbath & Huffman, Robert P. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, for plaintiff and appellant.

Thomas E. Simmons of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee.

recorded. The principal reported the incident to the South Dakota Department of Social Services as required by law. The principal called Strain into his office and advised him that there were serious allegations about sexual problems with students. He advised Strain to get an attorney. Following the report from the principal to the Department of Social Services, the Pennington County Sheriff's office investigated. During the course of the investigation, tape-recorded statements were obtained from a number of individuals including A.S., some of her classmates, and some former students. No criminal prosecution was instituted.

The Board members were aware of the sheriff's investigation. On or about July 22, 1986, the Board was furnished with copies of the transcripts of statements obtained by the sheriff's department. The superintendent of schools then conducted his own investigation which consisted of speaking with Strain and another potential witness.

On August 27, 1986, Strain was notified by letter that the Board was contemplating his dismissal and that he was suspended with pay from his employment responsibilities effective immediately. The notice provided:

> The reason for the contemplated dismissal is that allegations have been made against you by your former student, [A.S.], of improper sexual contact which is claimed to have occurred during last school year. If those allegations are found to be true, such conduct clearly would warrant your dismissal under the provisions of SDCL 13–43–15.[1]

Strain was also furnished with a copy of Article XII of the negotiated agreement between the school district and the Rapid City Education Association which gave him the right to request a hearing before the Board within seven days after his receipt of the notice.

On September 2, 1986, Strain, through counsel he had retained in May 1986, re-

quested a hearing, specifically requesting that it be set for September 17, 18 or 19, 1986. The Board consented and the hearing was held on September 18, 1986. The Board retained separate counsel to act as the hearing officer to preside over the hearing and rule on objections. Both sides were given the opportunity to present testimony and cross-examine witnesses. The Board also had a court reporter transcribe this hearing.

At the hearing A.S. related the incidents of indecent exposure and sexual contact by Strain. A.S. further testified that one day Strain asked that she run off some grades for him after school. She testified that Strain turned off the light in the computer room, pushed her against the wall, had her unbutton her jeans, pulled them down and then had intercourse with her.

A.S. acknowledged that she had not told the principal or the sheriff's department that Strain had intercourse with her. A.S. testified that she was afraid of what they would think of her, and she was afraid no one would believe her because of Strain's position. Strain was a tenured teacher at Rapid City Central High School with 25 years of teaching experience. While at Rapid City Central High School, he taught several subjects, and was a well-known and successful basketball coach. Additionally, Strain was active in involving Native Americans in athletics, academic and civic matters.

At the hearing, Strain claimed that A.S. was lying to avoid punishment for unexplained absences. However, the testimony before the Board showed substantial corroboration of A.S.'s version of events. A.S. had told some of her friends about the events taking place between her and Strain as early as December 1985, negating the claim of recent fabrication. A student testified that she definitely noticed that Strain would stare at A.S. from time to time. Strain told the sheriff's department that he had never been alone with A.S. in the computer room, but another teacher testified

---

1. SDCL 13–43–15 provides:
   A school board may dismiss any teacher at any time for plain violation of contract, gross immorality, incompetency, or flagrant neglect of duty.

that there were many occasions when Strain and A.S. were alone in that room.

Pamela Gregory (Gregory), then a student at the University of Arkansas and a 1982 graduate of Central High School, also testified at the hearing. Gregory, an honors student who had been involved in numerous extracurricular activities in high school, testified that she had taken a biology course from Strain during the first semester of her junior year. She described that while she was Strain's student he began putting his arm around her, but she did not think anything of that. Then, instead of her shoulder, his arm was to her waist and then underneath her arm, and "he was kind of trying to—to slide over like in front." She described that when her lab partner was gone, Strain would come and sit beside her. He would put his hand on her knee and eventually he would slide it up as far as it could go, and "he would try to leave it there and he would try to move it around." Gregory also described that she would be called up to his desk, and he would place his hand between her legs at the highest level possible, and "he would move his hands around as if he was trying to sexually excite me."

Gregory testified that she told no one about these advances because Strain could be one of the nicest persons in the world, and Strain's daughter and Gregory were friends. Gregory also testified that she realized how important Strain was and she did not think anyone would believe her. Gregory further testified that this had bothered her since her days in high school, because she knew it was wrong and knew it was deliberate. After talking with a counselor and a friend, Gregory decided to call the South Dakota Child Protection Agency. At the time Gregory called the Child Protection Agency, she did not know about A.S.'s claims.

At the conclusion of the hearing on September 18, 1986, following nearly nine hours of testimony, the Board remained in executive session with its hearing officer and counsel. The Board came out of executive session and publicly voted unanimously to dismiss Strain from his employment.

This vote was followed by an official written notification of the decision to dismiss which stated:

> The reason for your dismissal is based upon evidence submitted during your hearing, which showed conduct by you that was grossly immoral, and proved your incompetency to teach in this school district. It was also concluded by the Board of Education that your conduct involved a flagrant neglect of duty as a teacher.

Within the time permitted by SDCL 13–46–1, Strain appealed the decision of the Board to circuit court.

The circuit court "de novo" hearing was held on March 8, 1988. After reviewing the Board's hearing transcript and receiving further evidence, the circuit court affirmed the Board's decision. Strain appeals on several grounds.

## ISSUE ONE

**WHETHER THE BOARD WITHHELD EXCULPATORY EVIDENCE FROM STRAIN AND HIS COUNSEL, VIOLATING STRAIN'S DUE PROCESS RIGHTS.**

Strain asserts that the Board withheld exculpatory impeachment evidence consisting of statements from two students allegedly contradicting Gregory's testimony. Strain claims that the Board has a legal obligation to disclose exculpatory evidence, and the failure to disclose this evidence deprived Strain of his due process rights. The two statements in question were obtained by the Pennington County Sheriff's Department during its investigation and provided to the Board during the summer of 1986.

■ Exculpatory evidence is not a narrow term denoting alibi or other proof of innocence. Rather, it comprehends all evidence which tends to negate guilt of the accused. Stated affirmatively, exculpatory evidence supports the innocence of a defendant. *Com. v. St. Germain,* 381 Mass. 256, 408 N.E.2d 1358 (1980). It is evidence which clears or tends to clear an accused person from alleged guilt. *Gibson v.*

*State,* 110 Idaho 631, 718 P.2d 283 (1986). Applying these standards to this case, the statements of the students are not exculpatory.[2]

In the first statement the student said that the same thing happened to her as it did to Gregory. The statement shows that when the student would ask Strain a question, he would put his hand on her leg. When she went over to his desk to ask a question, he would put his hand between her legs. The touching made her a little bit uncomfortable. This statement is not exculpatory impeachment evidence. Rather, it confirms Gregory's testimony.

In the second statement, another student initially stated, "you know I can't honestly say that . . . he did anything to me." However, later in the statement she says that on one occasion when taking a test Strain put his arm around her and rubbed his arm on her making contact with her breasts. This occurred at a time when she was making up a test and the rest of the class was not there. She further stated that at the time she felt uncomfortable because she was asking Strain a question and he did not need to put his arm around her. In the statement she advised the sheriff's department that she liked Strain and respected him, and did not want to get involved. This statement is not exculpatory impeachment of the Gregory testimony.

Since the two statements in question are not exculpatory, there is no due process requirement that the Board provide the statements to Strain. It should be noted that prior to the hearing Strain made a specific request for a list of witnesses from who the Board would seek testimony. Neither of the above students testified at the hearing; however, the names of both of these students were provided to Strain on September 9, 1986, in Gregory's statement. More information was furnished to Strain by the Board prior to the hearing than was requested by Strain or required by due process. The Board's disclosures fully comport with fundamental fairness.

## ISSUE TWO

### DID THE CIRCUMSTANCES SURROUNDING THE BOARD'S HEARING CREATE AN UNACCEPTABLE RISK OF ACTUAL BIAS?

Strain claims that the Board's review of the sheriff's investigative file in July 1986, created actual bias on the part of the Board or an unacceptable risk of actual bias, depriving Strain of his due process right to a fair hearing before an impartial tribunal.

■ "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955). This applies to administrative agencies which adjudicate as well to courts. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Not only is a biased decision maker constitutionally unacceptable, but "our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison, supra,* 349 U.S. at 136, 75 S.Ct. at 625, 99 L.Ed. at 946. The standard to be applied is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure. *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Schneider v. McLaughlin Independent Sch. Dist.,* 90 S.D. 356, 241 N.W.2d 574 (1976). The United States Supreme Court has observed, however, that a school board is not disqualified as the decision maker solely because of prior involvement in a dismissal case. *Hortonville Dist. v. Hortonville Ed. Asso.,* 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Pre-decision involvement "is not enough to overcome the presumption of honesty and integrity in policy makers with decisionmaking power." *Hortonville, su-*

---

2. Based upon this holding, this court does not address the issue of whether the rules requiring disclosure of exculpatory evidence in criminal proceedings, as set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), should apply in proceedings before school boards.

*pra,* 426 U.S. at 497, 96 S.Ct. at 2316, 49 L.Ed.2d at 11–12.

■ Under the negotiated agreement between the district and the Rapid City Education Association, when the dismissal of a teacher is contemplated, the teacher must first be suspended from employment responsibilities. The Board is the entity empowered to suspend and dismiss teachers. *See,* SDCL 13–8–39, 13–10–2 and 13–43–15. Thus, the board needed to make a prehearing decision of whether to suspend Strain with pay. This was not a decision to be taken lightly in view of the serious accusation of sexual misconduct involving a respected and experienced teacher. Such an important decision could not be made in a vacuum of knowledge. The Board properly reviewed available information. Nothing in the record in this case indicates that any of the members of the Board were in any way prejudiced or biased against Strain or prejudged the case. Further, the circumstances of this case do not establish that an unacceptable risk of bias inhered in the Board's procedures. In fact, the procedures used by this Board in hiring independent counsel to preside over the hearing and rule on objections, and hiring a court reporter to transcribe the hearing should serve as a model to other school boards. Strain has not met his burden of overcoming the presumption that the Board acted fairly and impartially.

### ISSUE THREE

WERE STRAIN'S DUE PROCESS RIGHTS VIOLATED BY THE ADMISSION OF "PRIOR BAD ACTS" EVIDENCE?

■ At the hearing before the Board, evidence was introduced through Gregory's testimony of prior instances of Strain having sexual contact with a student. These acts occurred five to six years prior to the incident involving A.S. Strain's counsel objected to introduction of this evidence. The evidence was received for the limited purpose of "corroboration of the truth and veracity of the witness who is the complaining witness."

Pursuant to SDCL 19–12–5,

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In criminal cases of sexual contact, this court has been repeatedly held that "prior bad acts" evidence is admissible. *State v. Champagne,* 422 N.W.2d 840 (S.D.1988); *State v. Sieler,* 397 N.W.2d 89 (S.D.1986). In *Champagne,* this court held that evidence of prior sexual contact occurring four years prior to the incident being charged was admissible under the exceptions to SDCL 19–12–5. This court stated, "where specific intent is an element of an offense, proof of similar acts may be admitted to carry that burden even if the defense to the charge is a complete denial." *Id.* at 843. This court then said, "extrinsic evidence of intent is admissible in order for the state to meet its burden under a specific intent crime." *Id.* at 844.

Although Strain's defense in this case was one of complete denial, he also claimed that any touching that might have occurred was completely innocent or inadvertent. Further, the credibility of A.S. and Strain were greatly in dispute. Gregory's testimony was probative and relevant to Strain's intent in earlier incidents of sexual contact with students under circumstances very similar to those between Strain and A.S. The evidence was further admissible under SDCL 19–12–5 to show motive, plan and lack of mistake, all of which impact on the issue of credibility. The Board was careful to limit the use of Gregory's evidence in an appropriate manner. There is no showing that the evidence was inappropriately used to prove Strain's character in order to show that he acted in conformity therewith.

Strain next claims that Board violated his rights to due process by using this "prior

bad acts" evidence, without setting forth those prior acts as a grounds for termination, in violation of this court's ruling in *Sambo v. City of Mitchell*, 427 N.W.2d 379 (S.D.1988). Strain fails to recognize the significant distinction between the use of prior incidents in *Sambo* and the use of prior incidents here. In *Sambo*, the prior acts evidence was used as one of the bases for the discharge from employment. Here, the Gregory testimony was not offered nor used as a basis for dismissing Strain. It was only offered as relevant evidence on the issues of intent and credibility which were strongly contested. Strain was discharged for having inappropriate sexual contact with A.S., not for having sexual contact with Gregory. *Sambo* does not apply to this case.

■ Finally, Strain alleges that introduction of the "prior bad acts" evidence violated his due process rights, since he was advised of intent to introduce that evidence only one week prior to the hearing. It was undisputed that the August 27, 1986, notice of suspension did not mention the incidents involving Gregory. However, Strain was notified of the existence of this evidence on September 9, 1986, when Gregory's statement was furnished to his counsel. Following the furnishing of this statement, there was no motion for a continuance or other request for a postponement of the hearing. No objection on this ground was made at the hearing and the hearing was held on the date requested by Strain's counsel. Strain cannot now raise this issue on appeal.

### ISSUE FOUR

WAS THE BOARD'S DECISION CLEARLY ERRONEOUS, BASED UPON A REVIEW OF ALL THE EVIDENCE?

■ On appeal before the circuit court, Strain claimed that the Board's decision to terminate was arbitrary, capricious or an abuse of discretion. The circuit court affirmed the Board holding "there is substantial evidence to support the school board's decision." Strain correctly argues that the trial court improperly used the "substantial

evidence," rather than the "clearly erroneous" standard in determining whether the Board's decision was arbitrary, capricious or characterized by an abuse of discretion. The "clearly erroneous" standard is the proper standard for review of school board decisions. *Dale v. Board of Ed., etc.*, 316 N.W.2d 108 (S.D.1982); *Tschetter v. Doland Bd. of Ed., etc.*, 302 N.W.2d 43 (S.D. 1981).

Despite application of the wrong standard, the circuit court reached the right result. An appeal from a school board's decision is not a trial de novo in the true sense of the phrase. The appeal has the limited function of receiving evidence for "determining the legality, and not the propriety, of the school board's decision." *Moran v. Rapid City Area School Dst.*, 281 N.W.2d 595, 598 (S.D.1979). "School boards are creatures of the legislature and are a part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law." *Id.* at 598. "The proper scope of review for this court is the same as that of the trial court. We are not bound by a presumption that the trial court's decision is correct." *Tschetter, supra*, 302 N.W.2d at 46 (S.D. 1981).

■ The question for us on appeal, under the "clearly erroneous" standard is not whether we would have made the same decision as the school board, but whether, after reviewing the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Tschetter, supra; Matter of South Lincoln Rural Water System*, 295 N.W.2d 743 (S.D.1980). The outcome of this case is based almost entirely on a resolution of who and what to believe. The Board had an opportunity to observe the witnesses and judge their credibility. The Board obviously believed A.S. and the evidence supporting her testimony. After reviewing the entire record, this court is not left with a definite and firm conviction that a mistake has been committed in this case. The decision of the Board is not clearly errone-

ous, nor is it arbitrary, capricious or characterized by an abuse of discretion.

## ISSUE FIVE

DOES DUE PROCESS REQUIRE A SCHOOL BOARD TO MAKE AND ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW?

 Strain claims that his due process rights were violated because the Board did not enter findings of fact and conclusions of law. This contention overlooks the "de novo" factual inquiry that the circuit court has authority to conduct. *Burke v. Lead-Deadwood Sch. Dist. No. 40–1*, 347 N.W.2d 343 (S.D.1984). The trial de novo provided for in SDCL 13–46–6 permits the circuit court to make an independent inquiry into the facts which form the basis for the Board's decision to determine the legality of that decision. Consequently, a meaningful review of the issues can be conducted without findings of fact and conclusions of law.

After a full and fair hearing, the Board reached its decision to terminate Strain's employment.

We affirm.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

SABERS, J., concurs specially.

TUCKER, Circuit Judge, for HENDERSON, J., disqualified.

SABERS, Justice (concurring specially).

I concur except on the overly broad language of *Issue Three* relating to "Prior Bad Acts." Although evidence of the prior act was admissible under SDCL 19–12–5 because Strain claimed "that any touching that might have occurred was completely innocent or inadvertent," *State v. Titus*, 426 N.W.2d 578 (S.D.1988), it was not automatically admissible "to show motive, plan, and lack of mistake," or "intent," as the majority implies. See my writings in *State v. Perkins*, 444 N.W.2d 34, 40 (S.D.1989); *State v. Klein*, 444 N.W.2d 16, 21 (S.D. 1989); *Roden v. Solem*, 431 N.W.2d 665, 671 (S.D.1988) (*Roden II*); *State v. Cham-* *pagne*, 422 N.W.2d 840, 844 (S.D.1988); and *Titus, supra.*