Douglas D. RITER, Appellant,

v.

WOONSOCKET SCHOOL DISTRICT
# 55–4, and the Woonsocket School
Board, Appellees.

No. 17839.

Supreme Court of South Dakota.

Argued Nov. 16, 1992.

Decided Aug. 4, 1993.

Thomas K. Wilka of Hagen, Wilka, Schreier & Archer, Sioux Falls, for appellant.

Gerald L. Kaufman, Jr. of Churchill, Manolis, Freeman, Kludt and Kaufman, Huron, for appellees.

SABERS, Justice.

Tenured teacher and coach appeals his nonrenewal as head boy's basketball coach. We reverse.

## FACTS

On November 13, 1990, Leo Uken (Uken), Chairman of the Woonsocket School Board (Board), met with Douglas Riter (Riter)[1] to discuss Riter's resignation as head boy's basketball coach. At a special meeting of the Board on November 15, Riter was asked to resign. After refusing to resign, the Board voted to suspend Riter, with pay, as head boy's basketball coach. Riter retained counsel and served notice of appeal on Uken. Under the advice of the Board's attorney, Riter was reinstated November 20.

Jens Andree (Andree), Woonsocket High School's principal and athletic director, evaluated Riter on February 22, 1991, and "recommended with reservations" that Riter's position as head boy's basketball coach be renewed. On March 11, he withdrew his recommendation to renew and recommended instead that Riter not be renewed as head basketball coach. Andree testified that this change in recommendation was due to a letter he received from the South Dakota High School Activities Association Executive Director (Marlyn Goldhammer) citing various incidents of unprofessional conduct on the part of the Woonsocket assistant boy's basketball coach, Larry Ogle (Ogle). According to the letter, Ogle had verbally abused two officials during and following a recent game and had been in the locker room with the team when the officials heard team members using profanity.

During the March 11 board meeting, Riter's position as head boy's basketball coach was discussed. Riter was subsequently informed of the Board's intent not to renew that portion of his contract. After an informal conference on March 22, the Board voted not to renew Riter as head basketball coach. Riter submitted a written request for a formal hearing which was held April 17. The Board sustained its decision not to renew Riter's contract as head boy's basketball coach and Riter appealed. After a trial de novo, the circuit court affirmed the Board. On appeal, Riter presents three issues.

1. Douglas Riter is a tenured full-time social science teacher in the Woonsocket School District. Through the 1990–91 school year he was also the head boy's basketball coach, assistant girl's basketball coach, 7th and 8th grade basketball coach and boy's track coach. Only the head boy's basketball coaching portion of his contract was not renewed in the spring of 1991.

1. Whether the due process requirement of an impartial decisionmaker in teacher termination proceedings was violated by the Woonsocket Board.
2. Whether the Board's decision was arbitrary, capricious, or an abuse of discretion.
3. Whether reinstatement with back pay or damages is the appropriate remedy.

## DECISION

■ Under SDCL 13–46–1, an aggrieved teacher may appeal the decision of a school board not to renew his contract to the circuit court for a trial de novo. *Jager v. Ramona Bd. of Educ.*, 444 N.W.2d 21, 25 (S.D.1989); *Moran v. Rapid City Area Sch. Dist.*, 281 N.W.2d 595, 598 (S.D.1979). The appeal is not, however, a trial de novo "in the true sense of the phrase." It has the limited function of receiving evidence for the sole purpose of " 'determining the legality, and not the propriety, of the school board's decision.' " *Strain v. Rapid City Sch. Bd.*, 447 N.W.2d 332, 338 (S.D. 1989) (quoting *Moran*, 281 N.W.2d at 598).

■ The determination of the legality of the decision of the board is two-pronged. It must be determined "[f]irst, whether the school board acted legally, and second, whether the school board's decision was arbitrary, capricious, or an abuse of their discretion." *Moran*, 281 N.W.2d at 599 (citations omitted). A violation of either prong is an independent ground upon which to conclude that the school board's actions were illegal. *Id.*

■ Under the first prong, the procedural legality of the school board's action is reviewed. This includes determining whether the school board was vested with statutory authority to act and whether it complied with procedural requirements imposed by law. *Id.* The school board must comply with both statutory and constitutional procedural requirements. *Id.* "A violation of an individual's due process, equal protection, first amendment, or other rights guaranteed by our state or federal constitutions, even if there is full compliance with the statutory requirements, is grounds for a determination that the school board acted illegally and therefore its decision was illegal." *Id.* An individual's constitutional right to due process includes fair and impartial consideration by the school board. *Id.* at 600.

A fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well [as] to courts. Not only is a biased decision maker constitutionally unacceptable, but our system of law has always endeavored to prevent even the probability of unfairness.

*Strain*, 447 N.W.2d at 336 (citations omitted).

■ In determining whether the Board's decision not to renew Riter's contract was considered fairly and impartially by an unbiased school board, "[t]he standard to be applied is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure." *Id.* (citations omitted). Involvement by the Board, however, prior to the board's decision not to renew a contract, "is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking power." *Hortonville Joint Sch. Dist. v. Hortonville Educ. Assoc.*, 426 U.S. 482, 497, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1, 11–12 (1976) (citation omitted). The Board and its members are afforded a strong presumption of good faith. *Moran*, 281 N.W.2d at 600 (citations omitted). This deference, however, "must be balanced with a teacher's right to security in employment and to prevent dismissal of a teacher without cause." *Jager*, 444 N.W.2d at 25 (citation omitted).

In *Schneider v. McLaughlin Indep. Sch. Dist.*, 90 S.D. 356, 241 N.W.2d 574 (1976), we acknowledged the impossibility of having a hearing before a board that has no prior knowledge of the facts and concluded "it is sufficient to meet the requirements of a fair tribunal that the board base its decision upon competent, credible evidence and

that *there be no evidence of actual bias toward the teacher whose contract is not being renewed." Schneider,* 241 N.W.2d at 577 (emphasis added). Unlike *Moran* and *Strain,* however, the record in this case is replete with evidence establishing actual bias on the part of the Board toward Riter.

Although four of the five Board members, Uken, Morris Brosnan (Brosnan), Keith Senska (Senska) and Wayne Feistner (Feistner), testified that *their decision not to renew Riter as head boy's basketball coach was based upon Andree's recommendation,* the testimony at the formal hearing and the trial de novo indicates otherwise.

1. On November 15, 1990, on a vote of four to one, the Board suspended Riter as head boy's basketball coach but was forced to reinstate him under the advice of counsel.

2. Uken spoke with Jerry Jenssen, a member of the community, and offered him Riter's position as head coach prior to the emergency meeting of the Board November 15. Brosnan also spoke with Jenssen about replacing Riter prior to the November 15th meeting.

3. Uken met with Riter on November 13 and requested Riter's resignation. This request came before other members of the board were even aware of the emergency meeting. Uken also informed Riter at this meeting that if he didn't resign now, he probably wouldn't get his job back next year, regardless of whether he had a winning season.

4. Jim Sandness, a present member of the Board, testified that on November 19, four days after the Board voted to suspend Riter, Feistner stated to him that Riter should never had been tenured and that he had called the Summit School District concerning Riter and they had informed him that Riter "wasn't any good there."

5. When Dan Moran, an individual known in Woonsocket for his coaching ability, interviewed before the Board in February for the position of superintendent, he was asked whether he would be interested in taking the head boy's basketball coaching position. (Uken, Brosnan, Senska and Feistner all testified that their decision not to renew Riter as head boy's basketball coach was based upon Andree's recommendation, which they did not receive until the March 11 Board meeting.)

6. In February, 1991, Moran, was hired by the Woonsocket School Board as superintendent. Johnston abstained from voting because the Board refused to interview any other applicants. At that time, Feistner suggested to Sandness that Riter should be head girl's basketball coach instead of boy's.

7. Brosnan and Feistner attempted to discuss Riter with Andree *before* he changed his recommendation to nonrenew.

8. Andree's contract was normally renewed in February, but, this year, his contract was renewed at the March 11 Board meeting, after he had changed his recommendation to nonrenewal (the same Board meeting where he submitted his recommendation to nonrenew).

9. Past-superintendent William McDowell testified that normally the superintendent makes recommendations to the school board, not the athletic director.

10. Superintendent Davis recommended to the Board that Riter's boy's basketball coaching contract be renewed.

11. When Andree gave Davis his March 11 recommendation, Davis asked him what had changed since his February 22 evaluation. Davis testified that Andree did not respond other than to say, "Well, that's my recommendation."

12. A review of the record indicates that the problems which prompted Andree's change in his recommendation to nonrenew stem from conduct of the assistant coach, Larry Ogle.

13. The letter from Goldhammer, upon which Andree based his recommendation to nonrenew, addressed incidents involving Coach Ogle *only.* In fact, the letter from the game officials

which prompted the reprimand from the South Dakota High School Activities Association specifically notes that while they found the conduct of Ogle unprofessional, after Ogle left the locker room "[h]ead coach Doug Riter came in and was very professional." [2]

14. Uken questioned Riter's method of selecting the all-conference team. Evidence was presented at the trial that when Shirley Zell's grandson was put in as a guard during a game, Uken made a remark questioning Riter's decision to play Zell's grandson, insinuating that the circulation of a petition by Zell criticizing the Board influenced Riter's decision.[3]

15. Brosnan called Riter following a game during the 1990–91 season, speaking so loudly that guests in Riter's home were able to hear Brosnan's conversation. He criticized Riter for removing his son, a sophomore, from the game too much and yet, leaving him in to play with his classmates later in the game when the team had a significant lead.

16. Testimony also indicated that Brosnan questioned the selection of the most valuable and most improved players, indicating that he felt the coach should make these selections rather than the individual members of the team.

17. At the March 22 informal meeting of the Board, Senska questioned Riter regarding the reasons his son did not make the varsity basketball team. At the trial, Senska stated that he was asking this question as a *parent*, and not as a member of the *board*. Yet, the meeting was in executive session and therefore not open to the public. Senska's only reason for being in attendance was as a member of the Board.

■ It is clear that Riter's constitutional right to due process has been violated. The record clearly establishes actual bias toward Riter on the part of four of the five members of the Board, or at the very least, the "existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's procedure." *Strain*, 447 N.W.2d at 336 (citations omitted). Because a violation of either prong of the test is a sufficient ground upon which to find that the Board's actions were illegal, we reverse.

■ We also hold that the Board's decision was arbitrary, capricious, and an abuse of discretion and that its decision to nonrenew Riter's contract was clearly erroneous in light of the evidence. *Jager*, 444 N.W.2d at 25.

> In determining whether the school board's decision was arbitrary, capricious or an abuse of discretion, the circuit court must ascertain whether there is substantial evidence to support the school board's decision. Substantial evidence means such relevant and competent evidence as a reasonable mind might accept as adequate to support a conclusion. We must determine whether Board was clearly erroneous by examining the evidence supporting its decision.

*Oldham–Ramona Sch. Dist. v. Ust*, 502 N.W.2d 574, 581 (S.D.1993) (citations omitted). "SDCL 13–43–9.1 and 13–43–10 not only require Board to provide [Riter] with reasons for its intention not to renew [his] contract (procedural rights), but these reasons must not be arbitrary, capricious or an abuse of discretion as well (substantive rights)." *Jager*, 444 N.W.2d at 27. It is clear the Board has failed to meet this requirement.

The Board's decision to nonrenew is arbitrary and capricious. *Id.* at 26; *see also Oldham*, 502 N.W.2d at 584. The arbitrari-

---

**2.** It is interesting to note that the Board *renewed* Ogle's assistant boy's basketball coaching position despite his "unprofessional" conduct but *nonrenewed* Riter's boy's basketball coaching position for his "professional" conduct. This is simply further evidence indicating that the Board's decision was arbitrary and capricious.

**3.** Zell participated in the circulation of a petition which criticized the Board's conduct and drew attention to what the drafters of the petition termed a "personal vendetta" on the part of the Board.

ness is evident from the fact that Riter was, and continues to be, a tenured social science teacher, junior varsity girl's basketball coach, 7th and 8th grade basketball coach and boy's track coach. If the decision to terminate Riter as head boy's basketball coach was justified, presumably he should also have been terminated as to these other coaching positions.[4] The capriciousness of the Board's decision has already been shown. Therefore, for all of these reasons, the Board's decision was arbitrary, capricious, and an abuse of discretion and the trial court was clearly erroneous in finding otherwise.

This court's decisions in *Jager* and *Reid v. Huron Bd. of Educ.*, 449 N.W.2d 240 (S.D.1989) determine the proper remedy. Under *Jager*, our holding that the Board's decision not to renew Riter's coaching contract was illegal "places [Riter] back in the position [he] would have been in but for the Board's improper nonrenewal." *Id.* at 27. As we stated in *Jager:*

> If this court were to follow Board's reasoning, a school board could nonrenew a tenured teacher's contract for any reason, pay damages for one year's contract, and owe the person nothing else. Teacher job security would be meaningless. Tenure would become a hollow joke. As we have stated on several occasions, the purpose of the Continuing Contract Law is to prevent just such arbitrary terminations.

*Jager*, 444 N.W.2d at 28 (citation omitted).

 The Board and the Woonsocket School District would like this court to find, pursuant to *Jager's* language, that "reinstatement should not be made to a teacher whose presence on substantial grounds may not be appropriate." *Id.* (citation omitted). We fail to find substantial grounds indicating that reinstatement of Riter would be inappropriate. Under *Jager*, Riter must be reinstated as head boy's basketball coach with back pay. We reverse and remand to the circuit court to order reinstatement and to determine the amount of back pay.

WUEST and AMUNDSON, JJ., concur.

MILLER, C.J., and HENDERSON, J., dissent.

HENDERSON, Justice (dissenting).

"There is a strong presumption that the decision of the school board [here, Board opted to renew all of Riter's contract except his position as head boys basketball coach] was made in good faith and that members of the school board acted in good faith at all times." *Jones v. Sully Buttes Schools*, 340 N.W.2d 697, 700 (S.D.1983); *Moran v. Rapid City Area School District*, 281 N.W.2d 595, 600 (S.D.1979). As reflected below, the presumption was not overcome.

The majority opinion first spins its wheels upon the assertion that "actual bias" toward Riter existed on the part of four of the five members of the Woonsocket School Board. Then, because the Board did not entirely dismiss Riter, apparently due to satisfactory work in several other areas, the majority cries "arbitrary." Overall, the writing completely ignores the findings of the lower court, as well as the reasons for not renewing the contract in question. I disagree with majority's thesis and thus dissent.

Important procedural history below:

- Pursuant to SDCL 13–43–9.1, Riter received Board's Notice of Intent to Not Renew.
- Informal conference was thereafter held with Riter.
- Following a formal hearing on April 17, 1991, Board reaffirmed its earlier determination. SDCL 13–43–10.1.
- Board entered Findings of Fact and Conclusions of Law.
- Riter filed a Notice of Appeal in the Circuit Court under SDCL 13–46–1.

---

**4.** Feistner testified that Riter's kicking of chairs on the sideline contributed to the non-renewal of his boy's basketball coaching contract, yet he got two technicals for inappropriate sideline behavior when coaching girl's basketball and his girl's basketball coaching contract was renewed.

- Circuit Judge conducted a *trial de novo* on October 24, 1991.
- Circuit Judge entered Findings of Fact and Conclusions of Law affirming the Board's decision.
- Conclusion: All the necessary statutory steps were taken and Riter had due process hearings.

Trial court made the following findings:

1. There were chain of command problems which existed between Riter and the school administration.
2. Coach Riter did not supervise his players.
3. Coach Riter permitted his players to violate rules.
4. There was a failure by Riter to (a) supervise and (b) to exercise authority over the assistant coach.
5. Coach Riter failed to exercise proper supervision over the players' sideline behavior and sportsmanship.
6. There were curfew and drinking rules which Coach Riter failed to enforce.
7. Board's findings were supported by evidence as regards the following:

 (a) Coach tolerated vulgar and obscene language by players through lack of supervision;

 (b) Coach failed to attend a coaching clinic. He attended one of two clinics.

 (c) Public relations problems existed with parents and referees.
8. Board acted in good faith throughout the non-renewal proceedings.

A trial de novo, conducted pursuant to SDCL 13–46–6, granted the circuit judge the power to independently inquire into the facts, but "only for the purpose of passing on the legality of the Board's decision." *Dale v. Board of Education, Lemmon Independent School District*, 316 N.W.2d 108, 111 (S.D.1982). In the end, the trial court deemed that the entire record supported the school board's decision to non-renew, thus it was legal.

School board members should not be judicially examined and determined to be biased because of knowledge of affairs within the school district. They live in the community and are destined to know practices within the framework of the district's activities. Here, Riter would lead us to conclude that school board members should be oblivious to any facts involving the basketball program. Not so.

> If the requirements of a fair tribunal include the condition that the members of the Board must have had absolutely no prior knowledge of the facts that might make it advisable not to renew a teacher's contract and that they must have not discussed the matter and not have formed at least some tentative opinion that the teacher's contract not be renewed prior to the conference with the teacher, then as a practical matter the nonrenewal provisions of the continuing contract law are not available to a school board.

*Jones* at 700; *Schneider v. McLaughlin Ind. Sch. Dist.*, 90 S.D. 356, 363–64, 241 N.W.2d 574, 577 (1976). The circuit judge, having independently reviewed this factual scenario, could not find actual bias. Despite being non-hired as head basketball coach, Riter still retained his position as a tenured teacher for the school district. Obviously the school board acted legally.

In finding that Riter's constitutional right to due process was violated, the majority opinion asserts that the "record clearly establishes actual bias toward Riter" by four board members.

The standard to be applied is whether the record establishes either actual bias on the part of the Board or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the Board's position. (Citations omitted.) The United States Supreme Court has observed, however, that a school board is not disqualified as the decisionmaker solely because of prior involvement in a dismissal case. *Hortonville Dist. v. Hortonville Ed. Assoc.*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). Pre-decision involvement "is not enough to overcome the presumption of honesty and integrity in policymakers with decisionmaking

power." *Hortonville,* 426 U.S. at 497, 96 S.Ct. at 2316.

*Strain v. Rapid City School Board,* 447 N.W.2d 332, 336 (S.D.1989). Unless Riter can show that the Board has the kind of personal or financial stake in the decision showing a conflict of interest, he will fail to prove actual bias. *Hortonville,* 426 U.S. at 492, 96 S.Ct. at 2314; *Jones* at 700. Majority relies upon the fact that some Board members disagreed with coaching decisions made by Riter. Motive may exist, but such does not necessitate actual bias.

Our scope of review set forth in *Moran,* cited above, compels this Court to determine if the decision of the Woonsocket School District was arbitrary, capricious, or an abuse of discretion. The majority exemplifies "arbitrariness" by the fact that Riter "was, and continues to be, a tenured social science teacher, junior varsity girls basketball coach, 7th and 8th grade basketball coach and boys track coach." Riter was denied the renewal of the one coaching position due to his actions in that same coaching position. To have dismissed him from his duties as a social science teacher for his misdeeds as the head boys basketball coach would support the prime example of arbitrary and capricious behavior that the majority is on a quest to find. Furthermore, the fact that his coaching position was removed from his variety of duties did not affect his job security in teaching nor did it make a "hollow joke" out of tenure, which he still retains. *See Jager v. Ramona Bd. of Educ.,* 444 N.W.2d 21, 28 (S.D.1989). Both Riter and the majority writing have floundered in sustaining the burden.

When reviewing a school board's decision under the arbitrary, capricious, or abuse of discretion test, we must determine *if there is substantial evidence to support the school board's decision. Moran* at 599; *Huffman v. Bd. of Education,* 265 N.W.2d 262 (S.D.1978). As outlined above, there exists *substantial* evidence. Thus, Board's decision was not clearly erroneous. *Strain* at 336. In piercing the clearly erroneous standard, we are to determine if we, on this Court, are left with a definite and firm conviction that a mistake has been committed, and not if we would have made the same decision as a school board member. *Id.*

The members of this Court should not judge school board members under the same scrutiny of professional people. These school board members are elected and are, ordinarily, lay people from different walks of life. In *Strain,* we held:

School Boards are creatures of the legislature and are part of the legislative branch of government. Therefore, the judiciary may not invade the province of the school board's decision making unless such decision making is done contrary to law.

At both the Board hearing and the trial court, the factfinder had the opportunity to observe the witnesses and judge their credibility. *Strain* at 38; *Jager* at 25. The trial court found a fair tribunal, good faith and no actual bias. We should respect its decision.

Under the text of my writing, the issue of reinstatement and back pay would not be addressed.

"The power to contract with teachers is vested in the school board and the decision to renew or not renew a teacher's contract is not one for the judiciary." *Moran* at 598; *Mortweet v. Ethan Bd. of Ed.,* 90 S.D. 368, 241 N.W.2d 580 (1976). As no mistake or error has occurred, I would affirm the trial court.

I am authorized to state that Chief Justice MILLER joins this dissent.