WESTERN STATES LAND & CATTLE CO., INC. d/b/a Business Insurors, Plaintiff and Appellant,

v.

LEXINGTON INSURANCE COMPANY and Action Carrier, Inc., Defendants and Appellees.

No. 16902.

Supreme Court of South Dakota.

Considered on Briefs April 23, 1990.

Decided July 18, 1990.

William A. Moore of Samp Law Offices Sioux Falls, for plaintiff and appellant.

Timothy M. Gebhart of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendant and appellee Lexington Ins. Co.

Gary P. Thimsen of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellee Action Carrier, Inc.; Sara L. Burnette of Woods, Fuller, Shultz & Smith, Sioux Falls, on brief.

MORGAN, Justice.

Western States Land & Cattle Company (Broker) appeals grants of summary judgment in favor of Lexington Insurance Company (Insurer) and Action Carrier, Inc. (Insured) in an action for declaratory judgment. We affirm in part and reverse and remand in part.

In June, 1986, Insurer issued a $4 million excess liability insurance policy for Insured. The insurance was procured by Broker through a surplus lines brokerage agreement it had with Insurer.[1]

On June 9, 1986, Insurer informed Broker it was issuing the policy that day, setting forth the policy limits and premium. A Cover Note was issued the next day, likewise setting forth the policy limits and premium. The Cover Note contained a box in the upper right-hand corner labeled "IMPORTANT" that stated: "EARNED PREMIUM MUST BE PAID FOR THE TIME INSURANCE HAS BEEN IN FORCE." The Cover Note also stated: "In the event of cancellation, the earned premium will be computed short rate if cancelled by the

---

1. A surplus lines insurer is one not authorized to transact insurance in South Dakota but from which coverage that cannot otherwise be procured from authorized insurers can be obtained. SDCL 58–32–1, 58–32–16. Surplus lines insur- ance can be obtained only through a surplus lines broker. SDCL 58–32–1, 58–32–2. Under South Dakota law, a broker acts on behalf of the insured. SDCL 58–1–2(17).

insured unless ... subject to minimum earned premium, and pro rata if cancelled by Company." Similarly, Endorsement 5 to the policy stated: "If the Insured cancels this policy, earned premiums will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated herein, whichever is greater."

On June 20, 1986, Insured entered into a premium finance agreement with Cananwill Consumer Discount Company (Financier). Curtis Volz (Volz) of Broker signed the agreement on behalf of Insured, after discussing the policy limits and premium with an officer of Insured. Under that agreement, the bulk of the premium set forth in the fax and Cover Note was paid by Financier, and Insured was to repay Financier in nine installments. Paragraph 2 of that agreement provided that Insured "irrevocably appoints Cananwill, Attorney–In–Fact, and in the event of default and after proper notice has been given as required by law, grants to Cananwill authority to effect cancellation of the policy[.]" After the premium finance agreement was executed, Financier informed Insurer of the agreement and of the fact it had been "irrevocably appointed lawful attorney for the insured to take any action specified in the terms of the agreement."

In August, 1986, Financier directed Insurer to cancel the policy because Insured had failed to make any payment on the premium finance agreement. The cancellation was not made at the direction or request of Insurer. The policy was in full force and effect between its issuance in early June and the cancellation in August. Following the cancellation, Insurer calculated the earned premium according to the customary short-rate tables, pursuant to

Endorsement 5. That figure was greater than the minimum earned premium and, pursuant to the policy, was considered the earned premium. After calculating the earned premium, Insurer refunded the balance of the payments received to Financier.

In the meantime, however, Broker computed the amount of earned premium on a pro rata basis and settled its account with Insured accordingly. It assumed Insurer would also compute the amount of earned premium on a pro rata basis. The difference between the short-rate and the pro rata method of computation amounted to $31,600. Broker sought this sum from Insured as part of its claim for declaratory relief.

Before proceeding to Broker's issues, we must answer the contentions of Insurer and Insured that this court lacks jurisdiction to consider Broker's appeal.

## JURISDICTION

Both Insurer and Insured argue the lack of jurisdiction of Broker's appeal because Broker failed to file a statement of issues within the ten days required by SDCL 15–26A–50.[2] Broker counters that Insured provided no authority for its argument, thereby waiving it. We have held that failure to timely file and serve the notice of appeal is jurisdictionally fatal to the validity of an appeal, but Broker notes that under SDCL 15–26A–4, failure to take other steps does not affect the appeal's validity and does not necessarily require dismissal.

■ Insured did cite authority in the form of the statutory language requiring filing of a statement of issues found in SDCL 15–26A–50. Supporting authority is not necessarily confined to just case law,

2. SDCL 15–26A–50 provides:

Unless the entire transcript is to be included, the appellant shall within the ten days' time provided in § 15–26A–48 file with the clerk of the circuit court a statement of the issues he intends to present on the appeal and shall serve on the appellee a copy of the order or certificate and of the statement. If the appellee deems a transcript of other parts of the proceedings to be necessary, he shall, within ten days after the service of the order or certificate and the state-

ment of the appellant file with the clerk of the circuit court and serve on the appellant, the court reporter, and the clerk of the Supreme Court a designation of additional parts to be included. Unless with ten days after service of such designation the appellant has ordered such parts and has so notified the appellee, the appellee may within the following ten days either order the parts or move in the circuit court for an order requiring the appellant to do so.

but appropriate statutory law may be acceptable as well. Thus, we consider Insured's argument to be preserved.

On the merits, Broker is correct that only failure to timely serve and file the notice of appeal is jurisdictionally fatal to an appeal's validity,[3] while lesser omissions may be subject to sanctions. To decide whether dismissal is an appropriate sanction in this case, we look to the intent behind SDCL 15–26A–50. As Broker points out, the purpose of the requirement that a statement of issues be prepared is to allow an appellee the opportunity to order additional parts of the transcript when the appellant has failed to order a complete transcript. SDCL 15–26A–4. Here, there was no transcript made of the summary judgment hearings, so we fail to see how Insurer or Insured were prejudiced.

Furthermore, unlike the appellants in *State Highway Commission v. Olson*, 81 S.D. 237, 132 N.W.2d 927 (1965), and *Meade Education Association v. Meade School District 46–1*, 399 N.W.2d 885 (S.D.1987), Broker did file a statement of issues, although somewhat belatedly. This court's concern in both *Olson* and *Meade*[4] was that the failure to file the statement of issues precluded the court from making a meaningful review of the issues.

Therefore, since Insurer and Insured were not prejudiced and the statement of issues was filed, we see no reason for imposing the drastic remedy of dismissing Broker's appeal.

## ISSUES

Broker raises two issues:

(1) Whether the trial court erred in granting summary judgment in favor of Insurer on the grounds that Insured's policy was cancelled by its attorney-in-fact.

(2) Whether the trial court erred in granting summary judgment in favor of Insured on the grounds that the insurance contract was void due to mutual mistake.

We once again reiterate our standard of review for granting or denying summary judgment:

> In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985); *Ruple v. Weinaug*, 328 N.W.2d 857, 859–60 (S.D.1983).

*Pickering v. Pickering*, 434 N.W.2d 758, 760–61 (S.D.1989). More importantly, "construction of a written contract is a question of law for this court to consider." *Dirks v. Sioux Valley Empire Elec. Ass'n*, 450 N.W.2d 426, 427–28 (S.D.1990) (citing *Delzer Const. Co. v. South Dakota State Bd. of Transp.*, 275 N.W.2d 352 (S.D.1979)).

---

**3.** SDCL 15–26A–4 states, in pertinent part: "Failure of an appellant to take any step other than timely service and filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the Supreme Court deems appropriate, which may include dismissal of the appeal."

**4.** *Meade* involved an administrative appeal to the circuit court, where we said in dicta, that failure to file a statement of issues *might* be jurisdictional. However, because the issue was not briefed, we did not make a decision on it. 399 N.W.2d at 889, n. 2.

SUMMARY JUDGMENT FOR INSURER

Broker claims the trial court made two errors in its decision to grant summary judgment: (1) it improperly construed the word "insured" in the policy to include Financier, Insured's attorney-in-fact, and (2) the word "insured" was ambiguous, thus necessitating the need for parol evidence on usage and customs. We will examine each theory in that order.

■ First, Broker argues that because Financier was not specifically named in the policy as the "insured," there was no cancellation of the policy by Insured. This overly literal reading of the contract ignores long held authority that cancellation of a policy by an insured can be effected through the insured's agents. 43 Am. Jur.2d *Insurance* § 410 (1982); 6A A.J. Appelman, Insurance Law & Practice § 4224 (1972). This rule has been applied for years in cases involving premium finance agreements.

For example, in *Angelo v. Traviglia*, 7 Ohio Op.2d 383, 155 N.E.2d 717 (1957), the insured purchased an automobile insurance policy through an agent who retained the policy and gave the insured thirty days to pay the premium. When the insured failed to pay the full premium within that time, the agent returned the policy to the insurer marked "cancelled." Similar to Paragraph X of Insurer policy, this policy provided that it could be cancelled "by the named insured" by surrendering the policy. 155 N.E.2d at 720. The court held:

> This surrender in the opinion of this Court may be made by the named insured, in person, or by his duly authorized agent. Generally, cancellation ... by the insured is not an act so personal in its nature that it cannot be delegated in the absence of statutory prohibition of such delegation.

*Id.*

In reaching this conclusion, the court relied on *Chamberlain v. Employers' Liability Assurance Corp.*, 289 Mass. 412, 194 N.E. 310 (1935). In *Chamberlain*, the insured financed the payment of the premium for an automobile insurance policy through a premium financing agency. As here, the financing agreement irrevocably appointed the financing agency as the insured's attorney-in-fact and when the insured defaulted on payments the financing agency cancelled the policy. The Massachusetts Supreme Court held: "The policy was not cancelled by the insurer. Consequently, provisions applicable to such cancellations do not apply. The policy was cancelled, if at all, by the insured acting by his agent, the [premium finance company]." *Id.* at 312 (citations omitted). *See also Davis v. Roddie*, 113 N.J.Super. 457, 460, 274 A.2d 297, 300 (1963) (where policy can be cancelled "by the named insured" and is cancelled by premium finance agency upon default in premium payments, "the cancellation was by [the insured] through his authorized agent"); *Daniels v. Nationwide Mut. Ins. Co.*, 258 N.C. 660, 129 S.E.2d 314 (1963) (where policy is cancelled by premium finance company acting under a power of attorney the cancellation, if any, was by insured). *Tate v. Hamilton Insurance Co.*, 466 So.2d 1205, 1206 (Fla.Dist.Ct. App.1985) ("Where the [premium] finance company is named as attorney-in-fact for the insured, a cancellation by the finance company is equivalent to a cancellation by the insured himself, at least from the insurer's perspective.").

In each of these cases, although the policy called for cancellation by the named insured, it was recognized that cancellation by the insured's agent is cancellation by the insured. Thus, giving Insurer's policy language its plain and ordinary meaning, the policy contemplated cancellation by the insured or the insurer *or* their agents. *Grandpre v. Northwestern Nat'l Life Ins. Co.*, 261 N.W.2d 804, 807 (S.D.1977) ("the insurance contract's language must be construed according to its plain and ordinary meaning. It does not permit the court to make a forced construction or a new contract for the parties"); *see Strong v. State Farm Mut. Ins. Co.*, 76 S.D. 367, 78 N.W.2d 828 (1956); *Thompson v. State Auto. Ins. Ass'n*, 70 S.D. 412, 18 N.W.2d 286 (1945).

Though Broker conceded that Financier cancelled the policy because Insured re-

fused to pay the premium, it alleges that Insured was not truly in default under the premium finance agreement, because it had not received the coverage it had desired. This unsubstantiated argument flies in the face of the following: the premium finance agreement was entered into nearly two weeks after Insured, through Broker, was advised of the policy limits and premium; that the agreement was signed *after* Volz discussed the policy limits and premium with Insured; and finally, by entering into the finance agreement, Insured accepted the policy limits and premium and the insurance was in force from June until August. Broker's bare allegation of Financier's lack of authority is no more than a conclusory allegation that cannot withstand summary judgment. *Dirks, supra; see Home Fed. Sav. & Loan v. First Nat'l Bank*, 405 N.W.2d 655 (S.D.1987).

Finally, Broker claims that the word "insured" is ambiguous because, in paragraph XII of the policy, "insured" does not include entities which are given powers of attorney or who enter premium finance agreements. From this premise, Broker argues that this ambiguity permits parol evidence to prove custom and usage as to the amount of refund on a cancelled policy. We disagree.

■ This court has long held that custom and practice is immaterial when a contract explicitly deals with the matter claimed to be the subject of custom and practice. For example, in *Swiden Appliance & Furniture Inc. v. National Bank of South Dakota*, 357 N.W.2d 271 (S.D. 1984), this court held that "obligations created under course of dealing and usage of trade are subordinate to any terms of an express agreement with which the parties' conduct or a trade usage disagree" and that "express terms of the contracts control in the face of inconsistency" with any alleged custom and practice. *Id.* at 274, 275 (citing SDCL 57A–1–205(4) and *United*

*States v. E.W. Savage & Son, Inc.*, 343 F.Supp. 123 (D.S.D.1972), *aff'd* 475 F.2d 305 (8th Cir.1973)). *See also Bickett v. Borah*, 77 S.D. 140, 87 N.W.2d 552 (1958) (custom and usage on farm owner's entitlement to crop share could not vary express cash rent provision of lease). This court has also held that evidence offered to show the alleged custom and practice "was irrelevant and immaterial." *Swiden*, 357 N.W.2d at 275. *See also S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 299–300 (S.D.1984) (testimony to show industry custom and usage is inadmissible when it conflicts with the express terms of a contract).

■ In this case, the terms of the insurance policy are clear. Both the Cover Note and Endorsement 5 expressly state that if the insured cancels the policy, the return premium will be calculated on a short-rate basis. Here, Financier was the attorney-in-fact for the Insured and had express authorization to cancel the policy on behalf of Insured, something Broker admits. Under Broker's own version of the facts, Financier cancelled the policy, not Insurer. A party to an appeal cannot claim the benefit of a better version of the facts more favorable to his contentions than he has given in his own testimony. *See, e.g., Drier v. Perfection, Inc.*, 259 N.W.2d 496, 508 (S.D.1977).

The fact remains that Broker's claim that calculating the return premium on a short-rate basis is contrary to industry custom and practice cannot vary the explicit language of the contract. Therefore, we do not find that the trial court erred in granting summary judgment in favor of Insurer.

### SUMMARY JUDGMENT FOR INSURED [5]

Next, Broker argues that the court erred in granting summary judgment in favor of Insured for two reasons: (1) Insured failed

---

**5.** The trial court granted summary judgment in favor of Insured on the theory of mutual mistake of fact although such a defense was not pleaded by Insured. Insured claimed that it had requested ten million dollars excess coverage for a premium of $35,000 to $40,000, but

had only received four million dollars coverage for a premium in the amount of $380,000. Since we dispose of the issue on other grounds, we do not address the trial court's determination on the merits.

to timely assert its claim that the policy was void in Insurer's summary judgment motion, thus allowing an order to be entered that predicated its decision on the fact that a valid policy was existent for Insured at the time Financier cancelled it; and (2) the trial court previously held in Insurer's summary judgment motion that the policy was in effect, but had been cancelled by Insured's attorney-in-fact, thus precluding an order that no policy was in existence by reason of mutual mistake. We agree on both bases.

Though Broker attempts to fit its analysis within a res judicata theory, that is incorrect because at the time of the second summary judgment, Insurer's summary judgment order was not final *and* unreversed. The correct analysis is found in the theory of law of the case. We explained this doctrine in *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 260 (S.D.1976).

> The "law of the case" doctrine is intended to afford a measure of finality to litigated issues. It is a rule of practice and procedure which for policy reasons provides that once an issue is litigated and decided it should remain settled for all subsequent stages of the litigation. See, e.g., *Topps–Toeller, Inc. v. City of Lansing*, 1973, 47 Mich.App. 720, 209 N.W.2d 843.... It is the weaker corollary of the doctrines of res judicata, collateral estoppel and stare decisis and is intended to prove some degree of certainty where those doctrines could not yet apply. *Topps–Toeller*, supra. Its scope of application is reflected in the statement of the general rule:
>
> > 'In the earlier decisions of this court it was well settled that a question decided on a former appeal became the law of the case, not to be questioned in a second or any subsequent appeal involving any branch of the case.' *Gamble v. Keyes*, 1925, 49 S.D. 39, 43, 206 N.W. 477, 478.

*See also, American State Bank v. List–Mayer*, 350 N.W.2d 44, 46 (S.D.1984).

■ Here, all parties litigated whether Insured had cancelled the policy through its attorney-in-fact, Financier. Insured had notice of the hearing on Insurer's summary judgment motion and was present with counsel. The trial court ruled that Insured had cancelled the policy. A policy could not have been cancelled without first being in effect. Insured allowed this order to be entered without any objection. This order by the trial court precluded it from then, two weeks later, ruling that no policy existed because of mutual mistake. Therefore, under the doctrine of law of the case, the trial court erred in granting summary judgment in favor of Insured. *Shaffer, supra; American State Bank, supra.*

Therefore, we affirm the trial court's order granting summary judgment in favor of Insurer, but we reverse the trial court's order granting summary judgment in favor of Insured, and remand with instructions to enter an order in accord with this opinion.

All the Justices concur.

SABERS, J., deeming himself disqualified did not participate in this decision.