2001 SD 145

**Mary HUGHES, Plaintiff and Appellee,**

v.

**STANLEY COUNTY SCHOOL DISTRICT, Defendant and Appellant.**

**No. 21681.**

Supreme Court of South Dakota.

Argued April 24, 2001.

Decided Dec. 19, 2001.

Rehearing Denied Jan. 28, 2002.

---

Stanley E. Whiting, Winner, Attorney for plaintiff and appellee.

Charles M. Thompson and Bobbi J. Benson of May, Adam, Gerdes, & Thompson, Pierre, Attorneys for defendant and appellant.

TAPPE, Circuit Judge.

[¶ 1.] The trial court reversed Stanley County School District's decision to terminate Hughes' employment holding that School District abused its discretion. We affirm the trial court's decision.

## FACTS AND PRIOR DECISION

[¶ 2.] This case is before this Court for the second time. For a detailed statement of the facts and procedure relevant to the first appeal *see Hughes v. Stanley County School Bd.,* 1999 SD 65, 594 N.W.2d 346 (*Hughes I* ). A factual summary is provided here to facilitate discussion in this appeal.

[¶ 3.] Mary Hughes (Hughes) was employed as an elementary school guidance counselor for the Stanley County School District (School Board) between 1990 and 1997. In the fall of 1994 and in the spring of 1995, M.B., a third grade student, approached Hughes on four separate occasions, telling Hughes on one occasion that her father walked around the house after his showers without a towel. Hughes was later told by M.B. that her father had touched her in the area of her (undeveloped) breasts during a playful wrestling match. In a third conversation, M.B. said she had walked in on her father while he was masturbating. In the last conversation, M.B. reported that her father had asked her to touch his penis.

[¶ 4.] Hughes doubted M.B.'s claims because, in her experience counseling M.B., she had learned that M.B. had a tendency to fabricate or exaggerate the facts. Thus, on each occasion that M.B. reported her father's conduct, Hughes gave the same advice: she told M.B. to

speak with her mother to ask her father to cover up and to get her father to be more discreet. After the last conversation with M.B., Hughes conferred with the high school counselor about M.B.'s claims and both agreed that she was fabricating the touching incident. Both also agreed that Hughes should speak with the parents to discuss the allegations their daughter had made. When Hughes spoke to the parents, they both admitted the first three allegations and stated that M.B.'s father had taken steps to remedy his behavior. However, both parents stated that the allegation that the father had asked M.B. to touch his penis was untrue. Hughes continued to monitor the situation by checking with M.B. on a daily basis. No further incidents were mentioned by M.B. and she told Hughes that her father was now wearing a robe.

[¶ 5.] During this entire period of time, both state law (SDCL 26–8A–3) and school district policy[1] required teachers to report suspected child abuse. Furthermore, school district policy forbade teachers from contacting the parents to determine the cause of the suspected abuse.

[¶ 6.] In July 1996, as a result of investigation by the Stanley County Sheriff's Office of alleged sexual assault by M.B.'s father against a neighbor child, Hughes was questioned about the foregoing conversations with M.B. Hughes submitted a written report to her superiors regarding M.B.'s allegations. She explained that she did not believe M.B.'s allegations, but admitted that she did, in fact, contact M.B.'s parents concerning those allegations. M.B.'s father later entered a plea of guilty to sexually assaulting the neighbor child.

[¶ 7.] Hughes was criminally charged with failure to report child abuse or neglect under SDCL 26–8A–3. Her criminal case resulted in a mistrial and the charges against her were dismissed.

[¶ 8.] On September 27, 1996, Hughes was served with a notice of intent to terminate employment relationship. The notice, signed by the superintendent of schools, alleged that Hughes had "violated the written policy of Stanley County School District No. 57–1 as set forth at page 5 in

---

1. This policy provides:

Because of their regular contact with school-age children, school employees are in an excellent position to identify abused or neglected children. To comply with state law, it is the policy of the Stanley County School District that any teacher or other school employee who suspects that a child under 18 years of age has been neglected or physically abused (including sexual or emotional abuse) shall report orally or in writing to the principal or superintendent who shall then immediately report to the states attorney, Department of Social Services, county sheriff, or city police. The principal or superintendent shall inform the school employee initiating the action within 24 hours in writing that the report has been made. The employee shall make the report directly to the proper authorities if the principal or superintendent fails to do so.

Reports of child abuse/neglect should include the following information: name, address and age of child; name and address of parent or caretaker; nature and extent of injuries or description of neglect; and any other information that might help establish the cause of injuries or condition.

School employees shall not contact the child's family or any other persons to determine the cause of the suspected abuse or neglect. It is not the responsibility of the school employees to prove that the child has been abused or neglected, or to determine whether the child is in need of protection. It is only their responsibility to report his/her suspicions of abuse or neglect. Anyone who participates in making a report in accordance with the law and in good faith is immune from any civil or criminal liability that may otherwise arise from the reporting or from any resulting judicial proceeding even if the suspicion is proved to be unfounded.

the teacher handbook given to [her] for the 1994–95 school year under the heading 'Child Abuse/Neglect.'" The notice further alleged that she had "violated state law concerning the reporting of suspected child abuse, including but not limited to, SDCL 26–8A–3 and SDCL 26–8A–2(8) in the fall of 1994, which failure to report [had] been recently discovered by the administration and the State of South Dakota."

[¶ 9.] Hughes was initially suspended with pay until a hearing could be held on the matter. By the time the criminal trial was held, however, the School Board had suspended Hughes without pay pending the administrative hearing.

[¶ 10.] On February 13, 1997, the School Board held a hearing on the notice to terminate. After the hearing, the School Board voted to issue its "Notice of Termination of Employment Relationship," concluding Hughes had *breached her contract of employment.* She appealed that decision to the circuit court where the decision of the School Board was affirmed. The appeal in *Hughes I* followed.

## DISCUSSION

[¶ 11.] In *Hughes I* we set forth the standards for determining appeals involving teachers and school boards:

A proceeding in circuit court on an appeal pursuant to SDCL 13–46–1 is a trial de novo. On appeal to the circuit court, the court may determine the legality of that decision. *Strain v. Rapid City School Bd.,* 447 N.W.2d 332, 338 (S.D. 1989). However, great deference is given to the good faith determinations of school boards on decisions of whether to renew a teacher's contract. *Jager v. Ramona Bd. of Educ.,* 444 N.W.2d 21,

25 (S.D.1989). The appeal to the circuit court is not a trial de novo in the true sense of the phrase, as it has the limited function of receiving evidence for the sole purpose of determining the legality, and not the propriety, of the school board's decision. *Riter v. Woonsocket School Dist. No. 55–4,* 504 N.W.2d 572, 574 (S.D.1993). The determination of legality is a two-pronged process: (1) whether the School Board acted legally, and (2) whether the School Board's decision was arbitrary, capricious or an abuse of discretion. *Id.* On appeal to this Court, we review facts under the clearly erroneous standard, however, questions of law are reviewed de novo. *Aman v. Edmunds Cent. Sch. Dist.,* 494 N.W.2d 198, 199 (S.D.1992).

*Hughes I,* 1999 SD 65 at ¶ 15, 594 N.W.2d at 351.

### *Hughes I*—Failure to Report Suspected Child Abuse

[¶ 12.] In *Hughes I,* we reversed and remanded. In doing so, we held that the School Board acted arbitrarily, capriciously and abused its discretion in terminating Hughes *as there was no evidence to support the district's conclusion that Hughes' failure to report child abuse was a violation of her contract.* Central to the determination of *Hughes I* was the fact that, in deciding that Hughes violated the terms of her contract, the Board had applied the *objective* standard of SDCL 26–8A–3 instead of the *subjective* standard of the school policy.[2] We held that the Board did not have evidence to support the conclusion that *Hughes suspected abuse* and, therefore, violated school policy by not reporting it.

---

2. *See Hughes I,* 1999 SD 65 at ¶¶ 24–38, 594 N.W.2d at 352–354 for a more detailed discussion of subjective and objective standards

as they apply to the reporting requirements of SDCL 26–8A–3.

*Hughes I*—Speaking to Child's Parents

[¶ 13.] School policy also prohibited Hughes from contacting the child's parents if she suspected abuse. The Board terminated Hughes' employment for breach of contract, presumably for failing to report suspected child abuse (discussed above) and also for speaking with the child's parents. This Court found that the Board had insufficient evidence with regard to Hughes' failure to report. The question remained whether Hughes violated school policy by talking to M.B.'s parents. We remanded for the Board to determine whether it would have terminated her solely for that reason. Unstated in the opinion in *Hughes I*, but certainly implicit therein, was that the Board, on remand, was required to apply a *subjective standard* set forth in the school policy to determine whether Hughes *suspected* abuse and, therefore, violated school policy and her contract by contacting the child's parents.

[¶ 14.] Both parties argue that the law of the case doctrine applies in this case and, of course, each argues that the doctrine favors their position. The doctrine provides that "a question decided on a former appeal [becomes] the law of the case, not to be questioned in a second or any subsequent appeal involving any branch of the case." *Western States Land v. Lexington Ins.*, 459 N.W.2d 429, 435 (S.D.1990) (quoting *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 260 (S.D.1976)). Both parties, however, misinterpret our holding in *Hughes I*.

[¶ 15.] School Board claims that *Hughes I* held that Hughes admitted talking to the parents and, therefore, no fur-

ther findings need be made on that point. Hughes claims, on the other hand, that *Hughes I* held that, inasmuch as Hughes suspected no abuse, using either the objective or the subjective standard, there was no way she could have violated school policy. School Board is mistaken as to the holding in *Hughes I*. Although *Hughes I* did hold that Hughes admitted talking to the parents, that is not the same as saying that she admitted that she *suspected* child abuse. Hughes is also mistaken in her position because *Hughes I* only held that there was *no evidence* that she suspected child abuse; it did not hold that she did *not* suspect child abuse.

[¶ 16.] In reversing the Board, the trial court found[3] that the Board's decision was arbitrary and capricious and not a legal act. On remand, the Board, rather than hearing any additional testimony or making additional findings relating to Hughes' subjective belief as to whether child abuse had occurred, simply stated, in effect, that it would have terminated simply for contacting the parents. The Board took no additional evidence of any type and certainly no evidence bearing upon the question of whether Hughes suspected abuse. The Board did not make any findings to support a conclusion that Hughes suspected abuse. The only testimony in the record bearing upon that question is Hughes' own testimony as to her character, honesty and good record and that *she did not suspect abuse*. The record is void of any basis for making a determination that Hughes suspected child abuse. Therefore, the Board's decision to terminate Hughes for contacting the parents, absent a finding in the record that

---

**3.** No findings of fact or conclusions of law were requested by the trial court nor were any furnished. The failure on the part of the trial court to make findings of fact or conclusions of law is not fatal to its holding, howev-

er. There was no new evidence presented to the trial court and, thus, as in *VanGorp v. Sieff*, 2001 SD 45, 624 NW2d 712, the action was not tried to the circuit court on the facts.

Hughes suspected child abuse, is not supported by the record and is arbitrary, capricious and an abuse of discretion. Contrary to the dissent's assertion that we are: making a "twisted reinterpretation" of our reporting statutes; rendering child abuse reporting into an "almost meaningless muddle," and "shield[ing]" school officials who "evade their duties," this decision does not even attempt to interpret the reporting statutes. This decision concerns itself only with procedure in firing a teacher, and has nothing to do with interpreting the reporting statutes. Hughes' actions in speaking to the parents about the little girls' allegations are not excused here. At the very least, though, in firing a teacher for violating the reporting statutes (or school policy which forbids her from speaking to the parents), the Board is required to make findings to support its decision. This was not done here. The decision of the circuit court is affirmed.

[¶ 17.] GILBERTSON, Chief Justice, and SABERS and AMUNDSON, Justices, concur.

[¶ 18.] KONENKAMP, Justice, dissents.

[¶ 19.] TAPPE, Circuit Judge, for MILLER, Retired Chief Justice who was a member of the Court at the time this action was submitted but was disqualified.

KONENKAMP, Justice (dissenting).

[¶ 20.] This is one of those decisions, as Justice Jackson once reflected, in which the reasons given for the decision are more important than the decision itself.

For the majority, the result in this case is justified because there exists an irreconcilable contradiction between the School Board's policy and South Dakota law. The Board chose to fire Hughes based on a violation of its policy, and this Court on remand would not let it consider whether her violation of state law would have resulted in her dismissal. Therefore, Hughes wins. South Dakota's children may be the losers, however, for this Court turns mandated child abuse reporting into an almost meaningless muddle.

[¶ 21.] After today, no matter how graphic a child's complaint of abuse may be, educators who are required to report it, but who instead conduct their own private inquiry, may excuse their unlawful conduct by simply claiming that their personal investigation failed to turn up satisfactory proof. That is the precise opposite of what the law intends. Our laws entrust the investigation of child abuse to law enforcement and social service professionals. "It is the duty of the investigating agency to determine whether the report was founded." *Matter of Kimberly S.M.*, 226 A.D.2d 85, 649 N.Y.S.2d 588, 591 (1996). Both federal and state laws require educators and school counselors to "report" abuse whenever they reasonably suspect it.[4] The primary intent of these reporting laws is to protect children, not to shield school officials who evade their duties.

[¶ 22.] In this case, the child told Hughes, a school counselor, that her father asked her to touch his penis. She had earlier told Hughes of other sexually inappropriate things her father had done in her presence. In response, Hughes did

---

4. *See* Child Abuse Prevention and Treatment Act (CAPTA), 42 USC 5106g; SDCL 26–8A–3; SDCL 26–8A–2(8). Under CAPTA, sexual abuse includes the employment, use, persuasion, inducement, enticement, or coercion of any child to engage in, or assist any other person to engage in, any sexually explicit conduct or simulation of such conduct for the purpose of producing a visual depiction of such conduct. It also includes the rape, and in cases of caretaker or inter-familial relationships, statutory rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children.

the very thing our child abuse reporting laws seek to prevent. She conducted her own private investigation. In contacting the child's parents, Hughes decided, "I will go straight to the source. I will blow the whistle if it is happening or confront [the child] about her habitual lying." When educators intentionally ignore their legal duty to immediately report suspected child abuse, they endanger not only the child in question, but also other unknown children who are being abused or who are at high risk of becoming abused. Indeed, it was not until the father here was charged and convicted of sexually assaulting a neighbor child that his daughter's earlier complaint to Hughes came to light.

[¶ 23.] Usurping the role of state investigators, Hughes took it upon herself to find out "if it was happening." The School Board's policy on this point was clear: "school employees shall not contact the child's family or any other persons to determine the cause of the suspected abuse or neglect. It is not the responsibility of the school employees to prove that the child has been abused or neglected, or to determine whether the child is in need of protection." Although here this Court, in combination with its decision in *Hughes I,* manages to excuse her violation of this policy, Hughes was nonetheless bound to follow state law.

[¶ 24.] In the first appeal, this matter should have been remanded to the School Board on the question whether Hughes would have been fired for violating state law in conducting her own child abuse investigation. *Hughes v. Stanley County School Bd.,* 1999 SD 65, 594 N.W.2d 346 (*Hughes I* ) (Konenkamp, J., dissenting). After reviewing Hughes' own rendition of events, it seems inconceivable that the Board would not have made the same decision it did on the question whether she violated her contract. Her contract required her to obey state law.

[¶ 25.] In South Dakota, reporting is mandatory whenever a teacher or counselor has "reasonable cause to suspect" child abuse. SDCL 26–8A–3. Contrary to this Court's distorted interpretation in *Hughes I,* "reasonable cause to suspect" is not the same as "probable cause" in criminal law.[5] The United States Supreme Court distinguished between these terms, concluding that "reasonable cause to suspect" is a less stringent standard than "probable cause." *United States v. Ramsey,* 431 U.S. 606, 612–13, 97 S.Ct. 1972, 1977, 52 L.Ed.2d 617 (1977). Teachers and school counselors are not magistrates commissioned to rule on questions of legal sufficiency. If they have reasonable suspicion of abuse, they have to report it. As Hughes herself said, the child's comments raised a "red flag." That is all it takes.

[¶ 26.] A Wisconsin court properly defined "reasonable cause to suspect" in the context of reporting child abuse:

[T]he phrase "reasonable cause to suspect" fairly notifies a person of ordinary intelligence that if there is a reasonable basis to suspect that child abuse has occurred, that person must make a report to the appropriate agency. Whether a person possesses a reasonable suspicion that child abuse has occurred is not subject to misunderstanding. This requirement examines the totality of the facts and circumstances actually known to, and as viewed from the standpoint of, that person.

*State v. Hurd,* 135 Wis.2d 266, 400 N.W.2d 42, 45 (1986); (*see generally,* 2 Kramer,

---

5. In *Hughes I,* this Court took the term "reasonable cause to suspect," omitted the last two words, then defined the remaining words "reasonable cause" to mean the same as "probable cause." *See Hughes I* at ¶ 30, 594 N.W.2d 346.

Legal Rights of Children, § 16.15, pp. 59–60 [2d ed.] ). "Reasonable cause to suspect" occurs whenever a teacher or counselor entertains a reasonable suspicion, based on training and experience. If, as she claims, Hughes had no reasonable suspicion, then why would she have felt the need to contact the child's parents to find out "if it was happening"? Such a felt need is as close to a reliable mark of reasonable suspicion as we are ever likely to find.

[¶ 27.] Educators must appreciate how important their role is in stopping child abuse and neglect. When a school official reasonably suspects child abuse, the report must be made "immediately." SDCL 26–8A–8. Truly, it is not always easy or comfortable to report abuse, and sometimes reporting takes courage.[6] Our message to professionals obligated to report should be clear: it is against the law not to report suspected abuse immediately. Of course, it is understandable that a counselor like Hughes could make an error in judgment. If that were the reason for excusing her mistake, few would challenge it. But the Court in *Hughes I* and in this decision restructures the law to accomplish its end. For the sake of our children, however, I hope that South Dakota educators continue to follow the clear wording of our state statute, instead of this Court's unfortunate reinterpretation of it.

---

6. Linda L. Hale, Ph.D. and Julie Underwood, J.D., Ph.D., *Child Abuse: Helping Kids Who Are Hurting*, 74 MarqLRev 560, 573 (1991).