2004 SD 97

**In the Matter of the Alcohol Beverage License Suspension of Tim M. EN-GELS, d/b/a Harbor Bar, Watertown, SD License Nos. RB–3633 and RL–6048.**

No. 22865.

Supreme Court of South Dakota.

Argued Jan. 14, 2004.

Decided Aug. 25, 2004.

Rehearing Denied Sept. 27, 2004.

David R. Strait of Austin, Hinderaker, Hopper, Strait & Bratland, Watertown, South Dakota, for appellant Engels.

Michael T. Kenyon, SD Department of Revenue, Pierre, South Dakota, for appellee SD Department of Revenue.

GILBERTSON, Chief Justice.

[¶ 1.] Tim M. Engels, owner and operator of the Harbor Bar, appeals an order of the circuit court affirming the South Dakota Department of Revenue's (Department) decision to suspend his alcoholic beverage licenses for a period of fourteen days. The suspension was the result of a violation that occurred on September 27, 2000, when a Harbor Bar employee sold an alcoholic beverage to a minor. On appeal, Engels maintains that the 2003 version of SDCL 35–2–10.1 should apply retroactively to his violation. Next, he argues that it was impossible for him to comply with the statute, or alternatively, that he substantially complied with the statute. Finally, Engels believes the Department abused its discretion when it decided to suspend his liquor license for fourteen days. We reverse.

## FACTS AND PROCEDURE

[¶ 2.] The facts in this case are relatively straightforward. Engels owns and operates the Harbor Bar in Watertown, South Dakota. The Harbor Bar holds both a retail beer license and a retail liquor license. On September 27, 2000, Russ Farley, a Harbor Bar employee, sold an alcoholic beverage to person under the age of twenty-one. This underage individual worked for a company under contract with the South Dakota Department of Commerce and Regulation to conduct sting operations in order to ensure compliance with the state's alcohol sales laws.

[¶ 3.] At the time of the illegal sale, Farley had not completed an alcohol-training program approved by the Department. Farley was registered to take the South Dakota Retail Liquor Dealers TAM (Techniques of Alcohol Management) class on October 4, 2000, and he had previously signed an agreement with the Harbor Bar in which he agreed to check the identification of anyone who might be under the age of twenty-one.

[¶ 4.] As a result of this illegal sale and pursuant to SDCL 35–2–10, the Department entered an order suspending Engels' alcoholic beverage licenses for a period of fourteen days. The Department upheld its decision after Engels requested an administrative hearing. Engels appealed the Department's decision to circuit court. This appeal resulted in a remand for a second administrative hearing, whereupon the Department once again upheld the fourteen day suspension of his alcoholic beverage licenses.

[¶ 5.] Engels proceeded to file a second notice of appeal in circuit court. At the circuit court, Engels argued SDCL 35–2–10.1,[1] a safe harbor statute, should apply

---

1. Prior to its amendment in 2003, SDCL 35–2–10.1 provided:

No retail license may be revoked or suspended because of a violation of any statute, ordinance, rule, or regulation prohibiting the sale or service of any alcoholic beverage to a person under the age of twenty-one years if the violation was committed by an employee or agent of the licensee and:
(1) The licensee did not see the violation occur;
(2) The employee or agent has been certified by a nationally recognized training program approved by the Department of Revenue that provides instruction on techniques

and prevent any suspension of his licenses. Specifically, Engels contended that it was impossible for him to comply with SDCL 35–2–10.1(2) at the time of the illegal sale because no Department approved alcohol-training classes were available in Watertown before October 4, 2000. Engels also maintained that he substantially complied with SDCL 35–2–10.1(2) when he registered Farley for the TAM class to be held on October 4, 2000. Alternatively, Engels claimed that a 2003 amendment to SDCL 35–2–10.1 [2] should be applied retroactively in order to bar the Department from suspending his alcoholic beverage licenses.

[¶ 6.] The circuit court upheld the Department's suspension of Engels' liquor licenses. He now appeals and raises the following issues for our review:

1. Whether the 2003 version of SDCL 35–2–10.1 applies retroactively to this case and thereby prohibits the suspension of Engels' liquor licenses.

2. Whether SDCL 35–2–10.1(2) was unconstitutional as applied to Engels because of the doctrine of impossibility.

3. Whether Engels substantially complied with SDCL 35–2–10.1(2) when he registered his employee for a TAM class to be held in Watertown on October 4, 2000.

4. Whether the South Dakota Department of Revenue abused its discretion when it suspended Engels' alcohol licenses for fourteen days.

## STANDARD OF REVIEW

[¶ 7.] The case before us presents questions of both a legal and factual nature. We review questions of law under the de novo standard. *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 49, 612 N.W.2d

---

to prevent persons under the age of twenty-one years from purchasing or consuming alcoholic beverages;

(3) The licensee has a written policy requiring the licensee's employees or agents to examine the driver's license or other age-bearing identification document of any person who appears to be under the age of twenty-one years before selling or serving any alcoholic beverage to that person, and the employee or agent has agreed in writing to abide by the policy;

(4) The employee or agent has not been convicted of a similar violation within the past twelve months; and

(5) The licensee has not had any prior violation of any statute, ordinance, rule, or regulation prohibiting the sale or service of an alcoholic beverage to a person under the age of twenty-one years on the premise where the violation occurred in the previous twelve months.

2. Effective July 1, 2003, the South Dakota Legislature amended SDCL 35–2–10.1 to read:

No retail license may be revoked or suspended because of a violation of any statute, ordinance, rule, or regulation prohibiting the sale or service of any alcoholic beverage to a person under the age of twenty-one years if the violation was committed by an employee or agent of the licensee and the licensee has not had more than two violations of any statute, ordinance, rule, or regulation prohibiting the sale or service of an alcoholic beverage to a person under the age of twenty-one years on the premises where the violation occurred in the previous twenty-four months.

If the licensee meets the requirements of the conditions provided by this section, the secretary shall impose a civil penalty of five hundred dollars for a first violation and one thousand dollars for a second violation. However, if the employee or agent has not been certified by a nationally recognized training program approved by the Department of Revenue that provides instruction on techniques to prevent persons under the age of twenty-one years from purchasing or consuming alcoholic beverages, the secretary shall impose a civil penalty of one thousand dollars for a first violation and two thousand dollars for a second violation.

A licensee may request an administrative hearing pursuant to chapter 1–26 to contest the imposition of a civil penalty.

600, 611. As this case concerns a liquor-licensing statute, we follow the general rule that such statutes "are strictly construed against the licensee." *In the Matter of the Alcohol Beverage License Suspension of Cork 'N Bottle, Inc.,* 2002 SD 139, ¶ 8, 654 N.W.2d 432, 434. We give great deference to an administrative agency's findings of fact. SDCL 1–26–36; *Goebel v. Warner Transp.,* 2000 SD 79, ¶ 10, 612 N.W.2d 18, 21 (citation omitted). Thus, we will only reverse an agency's findings of fact if after a thorough review of the entire record we believe the findings to be clearly erroneous. *Id.*

## ANALYSIS AND DECISION

[¶ 8.] **1. Whether the 2003 version of SDCL 35–2–10.1 applies retroactively to this case and thereby prohibits the suspension of Engels' liquor licenses.**

■ [¶ 9.] The Department of Revenue administers the state's alcoholic beverage laws. SDCL 35–1–2. Under the South Dakota statutory scheme in effect at the time of the violation, the Department was authorized to suspend Engels' alcoholic beverage licenses because his employee, Farley, had not completed a Department approved alcohol training class when he committed the violation. SDCL 35–2–10.1 (2000 version). Pursuant to this authority, the Department suspended Engels' liquor licenses for fourteen days. Under the amended statute, however, where an employee sells alcohol to a person under twenty-one and has not completed the requisite training course, the Department may impose a fine of $1,000 for the first offense and $2,000 for the second offense. SDCL 35–2–10.1 (2003 version). The amended version of the statute does not authorize the Department to suspend a licensee's alcoholic beverage license in such a situation. *Id.*

■ [¶ 10.] On appeal, Engels contends that we should apply the amended version of SDCL 35–2–10.1 and hold that the Department lacks the authority to suspend his liquor licenses. Generally, "newly enacted statutes will not be given a retroactive effect unless such an intention is plainly expressed by the legislature." *Dahl v. Sittner,* 474 N.W.2d 897, 901 (S.D. 1991); SDCL 2–14–21. We have recognized, however, that "statutes which affect only procedural matters, as opposed to substantive rights" should be given retroactive effect. *Dahl,* 474 N.W.2d at 901; *Tischler v. United Parcel Service,* 1996 SD 98, ¶ 71, 552 N.W.2d 597, 608.

[¶ 11.] The amended version of SDCL 35–2–10.1 clearly does not contain express language directing its retroactive application. Therefore, in order to function retroactively, the statutory change must be deemed to have procedural rather than substantive effect. *Tischler,* 1996 SD 98, ¶ 71, 552 N.W.2d at 608. Here, the Legislature revoked the Department's power to suspend liquor licenses for the type of violation at issue in this case and substituted the authority to impose civil fines. Thus, our operative inquiry is whether the penalty dictated by SDCL 35–2–10.1 for selling alcohol to an individual under the age of twenty-one is substantive or procedural in nature.

[¶ 12.] Engels maintains that SDCL 35–2–10.1 is solely remedial in nature, and he cites *Tischler* for the proposition that "[s]tatutes affecting remedies" should be given retroactive effect. 1996 SD 98, ¶ 72, 552 N.W.2d at 608. In *Tischler,* we defined remedial statutes as those statutes "that describe methods for enforcing, processing, administering, or determining rights, liabilities, or status." *Id.* On the other hand, "[a] law is substantive if it creates rights, duties, and obligations." 2 Sutherland, Statutes and Statutory Con-

struction, § 41.09 (6th Ed 2001). After reviewing the statute in question and considering the nature of liquor licenses, we believe the penalty provision at issue in this case to be substantive rather than procedural.

[¶ 13.] In *Rushmore State Bank v. Kurylas, Inc.*, this Court explored the status of liquor licenses in South Dakota. 424 N.W.2d 649 (S.D.1988) (holding, *inter alia*, that a creditor may take a security interest in a licensee's liquor license). In *Kurylas*, we concluded that "as between the state and a licensee, there exists no [general] property right in the license but merely a privilege to conduct that state regulated business." *Id.*, 424 N.W.2d at 653. We specifically recognized the " 'commercial reality' that a liquor license is frequently the most valuable asset" an establishment can own. *Id.* at 655. Thus, although not a general property right, we acknowledged that a liquor license is a privilege that the State may not revoke without the fundamental due process guarantees of notice and a hearing. *Id.* at 653.

[¶ 14.] Under the statutory scheme in effect at the time of Engels' violation, the Department was authorized to suspend his alcoholic beverage licenses for two weeks. Rather than merely describing a method of enforcing the privilege, this power to suspend or revoke a license affected the very nature of the privilege, for without a liquor license, a licensee lacks the authority to sell alcoholic beverages in South Dakota. In other words, the Department's authority to revoke liquor licenses was not merely a procedural function, but was the power to affect the substance of the license itself. After the 2003 amendment, the Department would not be able to suspend Engels' alcoholic beverage licenses in this particular situation because the Harbor Bar was not cited for a similar violation in the previous twenty-four months. This was a substantive change to the statute that changed the nature of the privilege because it may no longer be suspended under similar facts.

[¶ 15.] In sum, when the Legislature amended the penalty described in SDCL 35-2-10.1 in 2003, it modified the actual substance of liquor licenses as opposed to changing a procedure designed to administer such a privilege. The statute does not specifically allow for retroactive application, and because it affects substantive rights rather than procedural rights, we hold that the statute does not have retroactive affect. Therefore, the 2000 version of the statute applied, and the Department had the authority to suspend Engels' alcoholic beverage licenses.

[¶ 16.] **2. Whether SDCL 35-2-10.1(2) was unconstitutional as applied to Engels because of the doctrine of impossibility.**

[¶ 17.] As explained above, the 2000 version of SDCL 35-2-10.1 applied to Engels' violation. Often described as a safe harbor statute, it prevented the suspension of a licensee's alcoholic beverage as long as the licensee's employee committed the violation, and the licensee satisfied five additional criteria listed in the statute. Here, the criterion at issue concerns the requirement that the employee who committed the violation "has been certified by a nationally recognized training program approved by the Department." SDCL 35-2-10.1(2).

[¶ 18.] Engels complied with each requirement found in the safe harbor statute except for SDCL 35-2-10.1(2). Farley, the employee who made the illegal sale, was not certified by a Department approved alcohol training program on September 27, 2000, the date of the violation. Engels maintains that he did everything he possibly could to get his employee certi-

fied, including registering Farley for a Department approved TAM class to be held in Watertown on October 4, 2000. Engels claims that it was impossible for him to comply with this requirement and, therefore, this part of the statute was unconstitutional as applied to him. In support of his argument, he cites *Jewett Bros. & Jewett v. Smail*, 20 S.D. 232, 243–44,105 N.W. 738, 741 (1905) for the proposition that the right to due process is violated when compliance with a statute is practically impossible.[3]

[¶ 19.] Although couched in terms of a constitutional challenge to SDCL 35–2–10.1(2), Engels' impossibility claim is essentially a factual question of whether it was possible for Farley to have completed a Department approved program before he committed the violation. The hearing examiner and circuit court both determined that Engels had the opportunity to comply with SDCL 35–2–10.1(2), and we employ the clearly erroneous standard of review to these findings. SDCL 1–26–36; *Goebel*, 2000 SD 79, ¶ 10, 612 N.W.2d at 21.

[¶ 20.] Specifically, the administrative law judge found that the South Dakota Petroleum Marketers "We Card" program conducted six training classes prior to July 1, 2000. The "We Card" program offered these classes in Watertown, Sioux Falls, Mitchell, Aberdeen, Pierre, and Rapid City. The circuit court relied upon a document, labeled Exhibit 11, offered into evidence by the Department purporting to show that the South Dakota Retailer's Association offered a TAM class in Watertown on June 28, 2000, and in nearby cities throughout June 2000. According to this document, the South Dakota Retail Liquor Dealer's Association also conducted TAM classes in the surrounding area between May and September, 2000. Engels vigorously disputes these findings.

[¶ 21.] At the December 12, 2001 administrative hearing, Paul Kinsman, the Director of Property and Special Taxes for the Department testified on its behalf. He testified that in the Watertown area, the only class which had been approved by the Department at the time it was being offered was not scheduled to commence until October 4, 2000. As Engels points out, the previous classes identified by the administrative law judge were only approved retroactively by the Department, and, therefore, it did not make sense for his employees to attend classes that were not Department approved at the time they were offered.[4] Attending such classes was described by Kinsman as "rolling dice" in hopes that the class would be retroactively approved after it was given.

[¶ 22.] Ordinarily, "[c]lear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *City of Deadwood v. Summit, Inc.*, 2000 SD 29, ¶ 9, 607 N.W.2d 22, 25. In this instance, however, we are essentially faced with error *per se* because there is simply nothing in the record upon which to make a finding that Engels had notice concerning programs which were Department approved before they were offered prior to the October 4, 2000 class. The evidence of the Department's witness is to the contrary.

[¶ 23.] **3. Whether Engels substantially complied with SDCL 35–2–10.1(2)**

---

3. We also note that *Jewett*, a decision affirming an injunction against a statute because of its unreasonable interference with interstate commerce, does not address the doctrine of impossibility.

4. Although the Department contends Engels had notice of which classes were approved and the opportunity to attend those classes, it admitted several times at oral argument before this Court that there is nothing in the record to support this assertion.

when he registered his employee for a TAM class to be held in Watertown on October 4, 2000.

### And,

[¶ 24.] 4. Whether the South Dakota Department of Revenue abused its discretion when it suspended Engels' alcohol licenses for fourteen days.

[¶ 25.] Based upon our resolution of Issue 2, we do not reach Engels' final two claims on this appeal.

[¶ 26.] Reversed.

[¶ 27.] SABERS, KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.