2005 SD 10

**Tony HANIG, Plaintiff and Appellant,**

v.

**CITY OF WINNER, Defendant and Appellee.**

No. 23208.

Supreme Court of South Dakota.

Considered on Briefs Nov. 15, 2004.

Decided Jan. 19, 2005.

George F. Johnson of Johnson, Eklund, Gregory, South Dakota, Attorneys for plaintiff and appellant.

Michael A. Henderson of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota, Attorneys for defendant and appellee.

MEIERHENRY, Justice.

[¶ 1.] Hanig's application for the renewal of his liquor license was denied by the City of Winner. Hanig believed the public hearing on the matter was conducted improperly, and he petitioned the trial court for a writ of mandamus to compel the Winner City Council to give him a fair and impartial hearing. The writ was denied on summary judgment. We reverse.

### FACTS

[¶ 2.] Hanig had leased and operated the "Peacock Bar" in Winner, South Dakota since 1992. In 2002, Hanig decided to open a new steakhouse and lounge. Because there were no liquor licenses available in the City of Winner, Hanig purchased a piece of property outside of the city limits and sought a liquor license from the Tripp County Commissioners. The Tripp County Commissioners granted Hanig a liquor license for the property. Hanig experienced difficulties with acquiring a sewer easement across a neighbor's property and asked the City of Winner to annex his property in order to attach to the city's sewer system. The city council approved the annexation. Under the law, Hanig's liquor license remained in effect

until its expiration at the end of 2002.[1] Approximately a month before the license expired, Hanig applied to the City for renewal. The City scheduled a public hearing.

[¶ 3.] On the day of the hearing Hanig submitted a building permit application to the City. His building permit application was for a restaurant and lounge to be built on the annexed property. At the liquor license hearing that evening, the city building inspector informed the city council that he was denying the building permit application because the site plan submitted by Hanig was inadequate and incomplete. When council members asked Hanig about the intended nature of the business, Hanig indicated he planned to open a steakhouse and lounge employing eight to ten people. Some of the details of his business plan had not been finalized, including whether he would employ "exotic dancers."

[¶ 4.] The city council consisted of six members. One of the council members was employed as a part-time waitress at a competitor steakhouse in Winner. The owner of the steakhouse, the council member's employer, spoke to her and wrote a letter to her urging denial of Hanig's license renewal. She and all other members of the council voted to deny Hanig's liquor license renewal. According to the minutes, the decision was made because "questions remained about the business plan and suitability of the location[.]"

[¶ 5.] Hanig petitioned the trial court for a writ of mandamus to compel the Winner City Council to give him a new hearing, contending his initial hearing was not "fair and impartial." Hanig claims the city council member employed by the competitor steakhouse had a conflict of interest. He further asserts the council denied the license based upon inappropriate considerations. The City moved for summary judgment on the petition, asserting that it had followed the appropriate procedure in reviewing and denying the renewal of the license, and that the decision to deny was based on appropriate considerations, i.e. the lack of an adequate business plan and the resulting inability to assess the suitability of the location. Summary judgment was granted and Hanig appeals.

## STANDARD OF REVIEW

[¶ 6.] The determinative facts in this case are undisputed. Ultimately this appeal concerns whether the circuit court applied the correct legal standard to these facts. "Questions requiring application of a legal standard are reviewed as are questions of law—de novo." *Voeltz v. John Morrell & Co.*, 1997 SD 69, ¶ 9, 564 N.W.2d 315, 316 (citing *Phipps Bros. Inc. v. Nelson's Oil & Gas, Inc.*, 508 N.W.2d 885, 888 (S.D.1993))(additional citations omitted).

## ISSUE

Whether the trial court erred in denying Hanig's request for Writ of Mandamus for a new hearing on the renewal of his liquor license before the City Council.

## DECISION

*Due Process Requires a Fair Tribunal*

[¶ 7.] Under South Dakota law, a municipality has the authority to grant a re-

---

1.  SDCL 35–4–14 provides:
    If by reason of the annexation of territory by any municipal corporation or county, the premises of an on-sale licensee shall be transferred from one jurisdiction to another, such licensee shall continue to legally operate until the expiration of such license. Thereafter, such licensee shall make application for his license renewal to the governing board which has jurisdiction of the licensed premises, and such license shall not be denied on the grounds that, by the issuance of such license, more on-sale licenses are in existence than is permitted by the limitations of this chapter.

tail liquor license. SDCL 35–2–1.2. The city commission's obligation or duty is to approve or disapprove an application for a license based upon the suitability of the applicant and the suitability of the proposed location. *Id.* The law provides:

> All applications for retail licenses except those set forth in § 35–2–1.1 shall be submitted to the governing board of the municipality within which the applicant intends to operate, or if outside the corporate limits of a municipality, to the board of county commissioners of the county in which the applicant seeks to operate. The application shall be accompanied by the required fee. The governing board shall have discretion to approve or disapprove the application depending on whether it deems the applicant a suitable person to hold such license and whether it considers the proposed location suitable.

*Id.* The law also requires a public hearing on the application.[2]

[¶ 8.] Hanig asserts that the City Council had a legal duty to perform the ministerial act of providing him a "fair and impartial" liquor license hearing free of arbitrary, capricious, or personal or selfish motives. Hanig seeks the issuance of a Writ of Mandamus to compel the city council to provide a fair hearing.

[¶ 9.] A Writ of Mandamus is appropriate if there is "*a clear legal right to performance of the specific duty* sought to be compelled and the respondent must have a definite legal obligation to perform that duty." *Baker v. Atkinson,* 2001 SD 49, ¶ 16, 625 N.W.2d 265, 271 (citing *Sorrels v. Queen of Peace Hosp.,* 1998 SD 12, ¶ 6, 575 N.W.2d 240, 242 (citations omitted)). We have approved a writ for a denial of a liquor license by a city commission when its action, "has been arbitrary or capricious, or based on personal, selfish, or fraudulent motives, or on false information, or on a total lack of authority to act[.]" *Hendriks v. Anderson,* 522 N.W.2d 499, 501 (S.D.1994) (citations omitted).

[¶ 10.] We have also said: "[a]n individual's constitutional right to due process includes fair and impartial consideration" by a local governing board. *Riter v. Woonsocket Sch. Dist.,* 504 N.W.2d 572, 574 (S.D.1993) (citing *Moran v. Rapid City Area Sch. Dist.,* 281 N.W.2d 595, 600 (S.D. 1979)). Due process also requires a fair tribunal. As we have previously stated:

> A fair trial in a fair tribunal is a basic requirement of due process. This applies to administrative agencies which adjudicate as well [as] to courts. Not only is a biased decision maker constitutionally unacceptable, but our system of

---

2. The law provides:

SDCL 35–2–3

No license for the on- or off-sale at retail of alcoholic beverages, as the same are defined and classified under the provisions of this title, shall be granted to an applicant for any such license, except after public hearing, upon notice, as provided for in §§ 35–2–4 and 35–2–5.

SDCL 35–2–5

The governing board of any incorporated municipality ... shall fix the time and place for hearing upon all such applications which may come before such board and the auditor or finance officer of such board

shall publish notice once in the official newspapers of such municipality ... which notice shall be headed "Notice of Hearing Upon Applications for Sale of Alcoholic Beverages," shall state the time and place when and where such applications will be considered by said board and shall state that any person interested in the approval or rejection of any such application may appear and be heard, which notice shall be published at least one week prior to such hearing. At the time and place so fixed, such board shall consider such applications and all objections thereto, if any, prior to final decision thereon.

law has always endeavored to prevent even the probability of unfairness. *Strain v. Rapid City Sch. Bd.*, 447 N.W.2d 332, 336 (S.D.1989) (citations and quotations omitted). We have further stated that "the 'very appearance of complete fairness' must be present." *Northwestern Bell Tel. Co., Inc. v. Stofferahn*, 461 N.W.2d 129, 133 (S.D.1990) (citing *Mordhorst v. Egert*, 88 S.D. 527, 223 N.W.2d 501, 505 (1974) (quoting *Wall v. American Optometric Assn., Inc.*, 379 F.Supp. 175 (N.D.Ga.1974))); *see also South Dakota Real Estate Com'n. v. Haggar*, 446 N.W.2d 66, 68 (S.D.1989) (" 'Appearance of fairness' is of course sought in each case, but the standard to be applied is 'due process.' ").

[¶ 11.] Hanig has the right to due process including a fair and impartial hearing. In an adjudicative proceeding, the test we have applied in determining whether an applicant received a fair and impartial hearing is whether there was actual bias or an unacceptable risk of actual bias.[3] *Voeltz*, 1997 SD 69, ¶ 12, 564 N.W.2d at 317; *see also Strain*, 447 N.W.2d at 336. As we stated in *Strain*, "[t]he standard to be applied is whether the record establishes either actual bias on the part of the [ ] [tribunal] or the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the [ ] [tribunal's] procedure." *Id.* Thus to prove his hearing was not fair and impartial, Hanig need only show an unacceptable risk of actual bias, and he is not necessarily required to show actual bias.

*Conflict of Interest*

[¶ 12.] Hanig claims that he did not receive a fair and impartial hearing be-

cause of a conflict of interest of the city councilwoman who worked for a competitor. He points out that the councilwoman was pressured from her employer to deny the renewal. He also claims that she may have been affected financially if Hanig's business successfully took business away from her employer. He argues that since she received part of her wages from tips, reduced patronage had the potential of reducing her income. The question is whether the undisputed facts constitute a conflict of interest sufficient to disqualify the councilwoman from voting on Hanig's renewal. We believe it does.

[¶ 13.] We have established that due process is denied when an unacceptable risk of actual bias exists. If a governmental official has a conflict of interest, an unacceptable risk of actual bias will normally exist and the official should not participate in the proceedings. In order to determine when and under what circumstances a conflict of interest disqualifies a local official by creating an unacceptable risk of actual bias, we first look for guidance from the legislature.

[¶ 14.] The legislature has addressed disqualification of officials in certain circumstances. For example, the law prohibits a "mayor, alderman, commissioner, or trustee" who holds a liquor license from voting "on the issuance or transfer of any such license." SDCL 9–14–16. Local officials are prohibited from having an interest in contracts with the local government entity. SDCL 6–1–1 (exceptions enumerated in SDCL 6–1–2). A State Banking Commission member must disqualify him or herself when a bank appli-

---

**3.** Adjudicatory hearings involve actions that are "particular and immediate," in contrast to legislative or rule making actions which are "general and future in effect." *Stofferahn*, 461 N.W.2d at 133 (citations and quotations omitted). A liquor license renewal hearing is adjudicatory.

cation "involves the establishment of an association in the primary trade territory of an association in which a board member has an interest." SDCL 52–4–13. A member of the Science and Technology Authority and a member of the Health and Educational Facilities Authority must abstain from "deliberation, action and vote by the authority in each instance where the business affiliation of any such [member] is involved." SDCL 1–16A–6, SDCL 1–16H–12. We can glean from these legislative mandates that public policy demands that officials normally disqualify themselves when they have a business or personal interest in the subject on which they must vote, regardless of whether this interest creates an actual bias.

■■■ [¶ 15.] We have further described what constitutes a disqualifying conflict of interest in our prior cases. We highlighted in *Speckels v. Baldwin* the importance of government officials "to serve their government and the people, uninfluenced by adverse motives and interests." 512 N.W.2d 171, 175 (S.D.1994) (citing *State v. Weleck*, 10 N.J. 355, 91 A.2d 751 (N.J.1952)). We said:

> Such required conduct demands undivided loyalty and compels public officers to refrain from outside activities which interfere with proper discharge of their duties, or which may expose them to the temptation of acting in any manner other than in the best interests of the public.

*Id.* (quoting 2A Antieau's Local Government Law § 22.59 (rev. ed.1992)). We determined, in *Voeltz v. Morrell* that potential employment of the hearing officer with one of the litigants—John Morrell & Co.—disqualified the officer because of the risk of actual bias. 1997 SD 69, ¶ 14, 564 N.W.2d at 318. In *Voeltz* we referenced the following language from the New Jersey Supreme Court: "The question will always be whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." *Id.* (referencing *Van Itallie v. Borough of Franklin Lakes*, 28 N.J. 258, 146 A.2d 111, 116 (1958)). Consequently, the circumstances and facts of each situation should control whether disqualification is required. If the circumstances show a likely capacity to tempt the official to depart from his duty, then the risk of actual bias is unacceptable and the conflict of interest is sufficient to disqualify the official.

[¶ 16.] In comparison, Minnesota courts consider a number of factors in determining whether the conflict requires an official's nonparticipation. The Minnesota Supreme Court set forth several factors to guide Minnesota courts in determining when a government official has a disqualifying conflict of interest. The Court stated:

> There is no settled general rule as to whether such an interest will disqualify an official. Each case must be decided on the basis of the particular facts present. Among the relevant factors that should be considered in making this determination are: (1) The nature of the decision being made; (2) the nature of the pecuniary interest; (3) the number of officials making the decision who are interested; (4) the need, if any, to have interested persons make the decision; and (5) the other means available, if any, such as the opportunity for review, that serve to ensure that the officials will not act arbitrarily to further their selfish interests.

*E.T.O., Inc. v. Town of Marion*, 375 N.W.2d 815, 819 (Minn.1985) (quoting *Lenz v. Coon Creek Watershed District*, 278 Minn. 1, 153 N.W.2d 209, 219 (1967)).

[¶ 17.] In *E.T.O.* the Minnesota court applied these factors to a situation involving a member of the local town board who voted against renewing a bar liquor license. *Id.* The board member had stated publicly his opposition to the bar because he owned land across from the bar which he believed had decreased in value since the bar opened. *Id.* at 816. After publicly voicing his opposition to the license renewal, he ran for an open seat on the town board and won. *Id.* He was elected mainly because of his opposition to the bar. *Id.* The Court held he was ineligible to vote on the bar's request. *Id.* at 819. The Court found he had "a direct, substantial and flagrant conflict of interest." *Id.* The Court found the Minnesota statute barring public officers from having a personal financial interest in contracts analogous.[4] The Court said:

> While it may be argued that issuance of a license is not technically a contract, the analogy is still strong. In any event, the statute makes clear the intent of the legislature to assure that a public official of Minnesota have no personal financial interest in an action performed in his official capacity.

*Id.* at 819–820.

[¶ 18.] The Iowa Supreme Court in determining whether a zoning board member needed to be disqualified because of an alleged conflict of interest looked to common law. *Bluffs Dev. Co., Inc. v. Bd. of Adjustment,* 499 N.W.2d 12, 14–15 (Iowa 1993). It stated:

> Under the common law, officials exercising quasi-judicial powers [are] disqualified or incompetent to sit in a proceeding in which [they have] prejudged the case, or in which [they have] a personal or pecuniary interest, where [they are] related to an interested person within

the degree prohibited by statute, or where [they are] biased, prejudiced, or labor [ ] under a personal ill-will toward a party. 1 Am.Jur.2d *Administrative Law* § 64, at 860–61 (1962).

The reasoning underlying the common law rule is simple: "[T]he public is entitled to have their representatives perform their duties free from any personal or pecuniary interest that might affect their judgment." *Netluch v. Mayor & Council of West Paterson,* 130 N.J.Super. 104, 107–08, 325 A.2d 517, 519 (1974). Deviation from the rule can invalidate the governmental action taken. The reason for such a drastic result is again simple: "to prevent the possibility of an official in a position of self-interest to deviate from his sworn public trust." *Id.* at 108, 325 A.2d at 519.

*Id.* The Court further pointed out that although "[t]here is no mathematical way to quantify the interest necessary to taint the process and disqualify quasi-judicial officers from acting on matters before them," courts have established standards. *Id.* at 15. The Iowa court stated the standards as follows:

> The interest must be different from that which the quasi-judicial officer holds in common with members of the public.... In addition, such interest must be "direct, definite, capable of demonstration, not remote, uncertain, contingent, unsubstantial, or merely speculative or theoretical."

*Id.* (quoting 1 Am.Jur.2d *Administrative Law* § 64, at 861 (1962)) (additional citations omitted).

[¶ 19.] The New Jersey Supreme Court condensed conflicts requiring disqualification into four types of situations:

> (1) "Direct pecuniary interests," when an official votes on a matter benefit-

---

4. The Minnesota statute is similar to SDCL 6–1–1.

ing the official's own property or affording a direct financial gain;

(2) "Indirect pecuniary interests," when an official votes on a matter that financially benefits one closely tied to the official, such as an employer, or family member;

(3) "Direct personal interest," when an official votes on a matter that benefits a blood relative or close friend in a non-financial way, but a matter of great importance, as in the case of a councilman's mother being in the nursing home subject to the zoning issue; and

(4) "Indirect Personal Interest," when an official votes on a matter in which an individual's judgment may be affected because of membership in some organization and a desire to help that organization further its policies.[5]

*Wyzykowski v. Rizas,* 132 N.J. 509, 626 A.2d 406, 414 (1993) (citation omitted). If a board member's interest fits within any of these categories, that board member either has an actual bias or an unacceptable risk of actual bias. *Id.* These categories are succinct and informative. We believe the categories can serve as guidance to South Dakota officials and courts in determining whether an actual bias or an unacceptable risk of actual bias exists.

*Councilwoman's Indirect Pecuniary Interest*

■ [¶ 20.] In the case before us, the question is whether the councilwoman's conflict of interest compelled her to abstain from voting on Hanig's license. It is undisputed that the councilwoman worked as a waitress in a competitor's bar in Win-

ner. She admits in her deposition that she knew her employer opposed the liquor license renewal for Hanig. She also admits that she received a letter from her employer voicing his opposition. She also conceded that if there was another bar in town her income based on tips may be impacted. Her conflict fits within the category of "indirect pecuniary interest." In addition, her interest is different from the interest of members of the general public. Therefore we hold that her conflict of interest is of sufficient magnitude that she should have been disqualified from participating in the decision.

*Conflict Invalidates Vote*

■ [¶ 21.] The second question of whether Hanig is entitled to a new hearing is more difficult. Some courts have held that if one member has a conflict of interest it taints the entire process and the applicant is entitled to a new determination without the disqualified member. *Piggott v. Borough of Hopewell,* 22 N.J.Super. 106, 91 A.2d 667 (Ct. Law Div. 1952); *Baker v. Marley,* 8 N.Y.2d 365, 208 N.Y.S.2d 449, 170 N.E.2d 900 (1960); *Buell v. City of Bremerton,* 80 Wash.2d 518, 495 P.2d 1358 (1972); *see also* 2 C. Dallas Sands, Michael Libonati & John Martinez, Local Government Law § 11:10 (October 2004). Other courts do not automatically invalidate the vote and instead take the position that where the required majority exists without the vote of the disqualified member, his participation in the deliberation and in the voting will not invalidate the result. *Waikiki Resort Hotel, Inc. v. City and County of Honolulu,* 63 Haw. 222, 624 P.2d 1353, 1371 (1981); *Singewald v. Minneapolis Gas Co.,* 274

---

**5.** A New Jersey court found that two council members had a disqualifying interest by belonging to churches whose ministers protested a liquor license petition. *Marlboro Manor,*

*Inc. v. Bd. of Com'rs of Montclair Tp.,* 187 N.J.Super. 359, 454 A.2d 905 (Ct.App.Div. 1982).

Minn. 556, 142 N.W.2d 739, 740 (1966); *Anderson v. City of Parsons*, 209 Kan. 337, 496 P.2d 1333, 1337 (1972); *Eways v. Reading Parking Authority*, 385 Pa. 592, 124 A.2d 92, 98–99 (1956); *See also* Mark W. Cordes, *Policing Bias and Conflicts of Interest in Zoning Decisionmaking*, 65 ND L.Rev. 161, 215–16 (1989). Still other courts look to additional criteria to determine if the vote should stand, such as whether the board member had disclosed the conflict, the influence of conflicted member in the decision, and the extent of the member's interest. Another situation which sometimes arises is if a vote requires a certain percentage or quorum and disqualification of all conflicted members leaves less than the quorum needed to vote. In those cases, the doctrine of necessity is applied. *See Gunthner v. Planning Bd. of Borough of Bay Head*, 335 N.J.Super. 452, 762 A.2d 710, 715–17, (Ct. Law Div. 2000). It, however, is only applied when there is "a pressing public need for action, there is no other forum in which the matter can be decided and the board cannot act without the disqualified members." *Id.* at 717.

[¶ 22.] In our prior cases where we have found due process violations based upon a conflict of interest, we have imposed remedies designed to place the complainant in the same position had the lack of due process not occurred. *Riter*, 504 N.W.2d at 577 (citing *Jager v. Ramona Bd. of Educ., Ramona School Dist.*, 444 N.W.2d 21, 27 (S.D.1989)). In *Stofferahn*, we found that the member with the conflict could not participate in the hearings. *Stofferahn*, 461 N.W.2d at 135. In *Speckels* and *Riter*, we voided the proceedings. *Speckels*, 512 N.W.2d at 176; *Riter*, 504 N.W.2d at 577. Following our prior cases and the analysis of the courts in other jurisdictions that void the action, we hold that under the facts of this case, Hanig is entitled to a new hearing.

[¶ 23.] The basis of granting a new hearing is first and foremost that one of the council members had an indirect pecuniary interest. Additionally, the councilwoman did not disclose the conflict or recognize that she needed to disqualify herself. The necessity to disclose a conflict cannot be over emphasized. If board members conscientiously consider their conflicts and disclose them prior to any action, it would give the applicant or petitioner the opportunity to weigh the nature of the conflict and determine whether to waive the disqualification. Without the disclosure, the applicant is placed in the precarious position of challenging a board member who may not have disclosed a conflict and refuses to disqualify himself or herself. On the other hand, the applicant may not discover the conflict until after the hearing and denial of the request. In this case, the councilwoman should have disclosed her conflict and the letter she had received from her boss urging denial of the license and disqualified herself from the proceedings.

*Other Concerns*

[¶ 24.] In addition to the conflict of interest issue, there are other concerns about the council's action that raise questions about its fairness. Hanig pointed to the following "circumstantial evidence": (1) that the factors considered by the council are not expressly required by statute; (2) that the city council did not notify him that an approved building permit was a prerequisite to renewal; (3) that the city did not object to the location when the property was annexed; (4) that the city has renewed two other liquor licenses located in the same area; (5) that the city did not follow its own long standing policy of renewing a liquor license absent any illegality in its use; and (6) that the council

did not allow Hanig additional time to provide a detailed business plan.

[¶ 25.] The council, according to its minutes, denied the renewal because "questions remained about the business plan and suitability of the location." The City also presented depositions by the mayor and council members wherein they stated that their primary concern was that Hanig's building permit had been denied. Hanig points out that these factors are not expressly required by statute. Specifically, he is not required by law to have a building permit before getting a liquor license. We have recognized, however, that a city council may look at factors beyond the statutory requirements such as the type of business, how it will be operated, policing issues and other factors "inherently associated in the sale of alcoholic beverages." *Hendriks,* 522 N.W.2d at 501–02 (citing *Randall's–Yankton, Inc. v. Ranney,* 81 S.D. 283, 288, 134 N.W.2d 297, 300 (1965)). Here the denial of the building permit was not disclosed until the hearing nor was the fact that Hanig's liquor license renewal hinged on the permit approval. Hanig's prior experience with the City involved almost automatic renewal of a license absent any illegality in its use. In fact, when he received renewal to the license for the Peacock Bar, which he managed, he was not even required to appear at the hearing. Also, the City annexed his property a short time earlier, which included the county liquor license, without voicing concern. This "circumstantial evidence," as Hanig entitles it, may not alone cause us to reverse the council's decision as arbitrary and capricious or a denial of due process; however, it does raise questions. We address them only to alert and remind the council that since it will need to have a new hearing on Hanig's application, it should be diligent in providing a fair and impartial proceeding.

**CONCLUSION**

[¶ 26.] Based on the undisputed facts concerning the councilwoman's indirect pecuniary interests, we reverse and direct the circuit court to issue a writ of mandamus requiring the city council to conduct a new hearing and vote without the disqualified member's participation and with full disclosure of any conflicts of the remaining members.

[¶ 27.] SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶ 28.] GILBERTSON, Chief Justice, dissents.

GILBERTSON, Chief Justice (dissenting).

[¶ 29.] I respectfully dissent. I would affirm the trial court.

[¶ 30.] Pursuant to the Twenty-first Amendment of the United States Constitution, South Dakota has enacted a detailed legislative program for the regulation and control of the sale of alcoholic beverages within its boundaries. In *State v. I–90 Truck Haven Service,* 2003 SD 51, ¶ 8, 662 N.W.2d 288, 291, we set forth the standard for statutory construction of alcoholic beverage statutes:

> Ultimately, the purpose of statutory interpretation is to fulfill the legislative dictate. Intent is ordinarily ascertained by examining the express language of the statute. We therefore defer to the text where possible. We read statutes as a whole along with the enactments relating to the same subject. We assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage

[*Faircloth v. Raven Industries, Inc.,*] 2000 SD 158, ¶ 6, 620 N.W.2d 198, 201 (citations omitted).... We have specifi-

cally applied this standard of statutory analysis in a previous case concerning the legal rights and responsibilities of alcohol beverage licensees. *Rushmore State Bank v. Kurylas, Inc.*, 424 N.W.2d 649, 653 (S.D.1988).

[¶ 31.] In the matter of liquor licenses, the Legislature recognized that the issuance of licenses by municipalities could involve a conflict of interest. Therefore it passed SDCL 9–14–16 which prohibits a "mayor, alderman, commissioner, or trustee" who holds a liquor license from voting "on the issuance or transfer of any such license." In a similar vein, SDCL 35–1–3 prohibits the Secretary and employees of the Department of Revenue from having any "interest, financial or otherwise, in the . . . sale of alcoholic beverages." SDCL 35–2–6.4 bars liquor manufacturers and wholesalers from holding a retail liquor license. However, that is as far as the Legislature felt it appropriate to act. Significantly for this case, it never prohibited even those local city council members who held liquor licenses from voting on other liquor license applications. We have said repeatedly that the Legislature said what it meant and meant what it said. *S.D. Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 22, 589 N.W.2d 206, 210. Nevertheless, based upon case law from other states with their own liquor statutes, the Court today expands the clear scope of SDCL 9–14–16 to prohibit voting on a liquor license if a council member has a de minimus financial interest in the issue.

[¶ 32.] More significantly, the Court concludes that one council member's de minimus financial interest taints the vote of the entire council. This is not a criminal case requiring a unanimous vote. Rather a majority vote will approve a proposition. This may be by an affirmative vote of four members or three with

the mayor breaking a tie. SDCL 9–8–8, 9–8–3.

[¶ 33.] Citing *Strain v. Rapid City School Dist.*, 447 N.W.2d 332, 336 (S.D. 1989), the Court also applies to liquor license proceedings a due process standard applicable to tenured teacher termination proceedings conducted by school boards. The two types of proceedings are dissimilar as they address completely different interests.

[¶ 34.] The formality and procedural requisites of a hearing to address licensing issues depends on the nature of the importance of the property interests involved. *Appeal of Schramm*, 414 N.W.2d 31, 34 (S.D.1987)(citing *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)). Property rights are created and defined by state statutes.

> "To establish a procedural due process violation, a plaintiff must demonstrate that he has a protected property or liberty interest at stake and that he was deprived of that interest without due process of law." First, the property interest must be derived from a source independent from the Constitution. Second, the individual must have been deprived of this right by a state actor. Property interests are granted by state law. . . . *See also* [*Hopkins v. Saunders*, 199 F.3d 968, 975 (8thCir.1999) ]("A property interest worthy of due process protection must be granted or defined by a source independent from the Constitution, such as state law.")(citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)).

*Osloond v. Farrier*, 2003 SD 28, ¶ 16, 659 N.W.2d 20, 24–25 (some citations omitted). A tenured teacher has a property right in his or her position under our teacher con-

tract law. This is granted the teacher by statute. *See* SDCL 13–43–6.3. *See also Wirt v. Parker School Dist. # 60–4*, 2004 SD 127, 689 N.W.2d 901.

[¶ 35.] There is no statute granting the applicant for a liquor license a property right in that license. Moreover, we have consistently recognized the wide statutory latitude the liquor statutes grant the appropriate governing authority concerning the issuance of licenses. An earlier case which had cause to examine the nature of a liquor license in South Dakota, concluded:

> From the above statutes, it is readily apparent that a liquor license in the State of South Dakota is nothing more than a personal privilege to participate in the monopoly granted to the state by the Twenty–First Amendment to the United States Constitution and implemented by Title 35 of the South Dakota Compiled Laws. Being a privilege, its value necessarily depends upon the circumstances of its use. Standing alone, a liquor license is worthless under the South Dakota statute. It is not a severable commodity from the premises where it is used.

*Application of Roberts*, 358 F.Supp. 392, 396 (D.S.D.1973). In *Kurylas*, 424 N.W.2d at 653, we held that, as between the state and the licensee, there clearly is no general property right in a liquor license in South Dakota. *See also State v. I–90 Truck Haven Service, Inc.*, 2003 SD 51, ¶ 16, 662 N.W.2d at 292; *In re Engels*, 2004 SD 97, ¶ 13, 687 N.W.2d 30, 34.

> License renewal applicants in other jurisdictions may be entitled to rudimentary procedural due process, but our law does not require imposing the same process allowed to those whose licenses are up for revocation, because "there clearly is no general property right in [an alcoholic beverage] license in South Dakota as between the state and the licensee."

[*Kurylas*, 424 N.W.2d at 650]; *cf.* SDCL 35–2–10; *Janssen v. Maxam*, 289 N.W.2d 256 (S.D.1980)(administrative procedures act not applicable to denial of license application).

*Woodruff v. Meade County Bd. of Com'rs*, 537 N.W.2d 384, 386 (S.D.1995).

[¶ 36.] Despite the absence of a general property right in a liquor license, the license applicant is guaranteed the same procedural due process rights as any citizen who wishes to be heard by a governing body: the right to a hearing, notice of the hearing and the right to be heard on the license application. *Kurylas, supra; Engels, supra.* These guarantees are created by statute. *See* SDCL 35–2–3 ("No license for the on- or off-sale at retail of alcoholic beverages ... shall be granted to any applicant for any such license, except after public hearing upon notice[.]"). All of these procedural steps were followed in this case. Thus, the *Strain* standard is inapplicable herein. Clearly there was no property right as: (1) this was only an application for the liquor license; and (2) as between the issuing authority and the holder of an existing license, no property right exists.

[¶ 37.] This leaves the question of the legal status of the council's decision to deny the liquor license. Clearly the applicant is entitled to a fair tribunal. *See Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). However, even when there are significant property rights at stake such as in *Strain*, a board member is not disqualified as a decision maker solely because of prior involvement. "Pre-decision involvement 'is not enough to overcome the presumption of honesty and integrity in policy makers with decision-making power.'" *Strain*, 447 N.W.2d at 336 (quoting *Hortonville Dist. v. Hortonville Ed. Ass'n*, 426 U.S. 482, 497, 96 S.Ct. 2308, 2316, 49 L.Ed.2d 1, 11–12 (1976)).

[¶ 38.] Public decision makers "are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances." *See Voeltz v. John Morrell & Co.*, 1997 SD 69, ¶ 11, 564 N.W.2d 315, 317 (quoting *Northwestern Bell Tel. Co., Inc. v. Stofferahn,* 461 N.W.2d 129, 133 (S.D.1990)). To overcome that presumption the record must establish either: "1) actual bias on the part of the adjudicator, or 2) the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the proceeding." *Id.*

[¶ 39.] Based on the limited statutory prohibitions cited above, I would not have disqualified the councilwoman in question on the basis that she got tips from part-time employment that Hanig claimed might decline as a result of new competition. The councilwoman testified under oath that the basis for her vote was the lack of a building permit. She was unsure whether another bar in Winner would reduce her income from tips. Hanig offered no evidence to contradict any of this.

[¶ 40.] The councilwoman's direct contact from her employer is a different matter. That contact could have put the councilwoman's job squarely on the line based upon her vote. Given that this is an appeal from a summary judgment order, it was probably sufficient to disqualify her. However, there were still five votes from other council members to deny the license renewal. Those votes were for valid reasons, those being the applicant's lack of a building in which to engage in the sale of

liquor and his lack of a building permit to build one.[6]

[¶ 41.] Hanig did not appeal the city building inspector's denial of his building permit.[7] Thus, there was no basis to question the validity of its denial. This was significant for purposes of summary judgment as it placed Hanig in the legal posture of seeking a liquor license for a location without a building, a building permit, or the right to appeal its denial. Since the city council never got a chance to review the denial of the building permit because of Hanig's failure to appeal it, any fault rested with Hanig and not the Council.

[¶ 42.] Liquor licenses are granted to a specific location and logic would dictate that it should not be to a vacant lot. SDCL 35–2–1.2 authorizes the city council to require a "suitable" location for the issuance of a license. It is not beyond the council's discretion to conclude that a vacant lot for which there is no valid building permit is not "suitable." As this Court noted in *Randall's–Yankton, Inc. v. Ranney,* 81 S.D. 283, 134 N.W.2d 297 (1965), the purpose of the public hearing on a liquor license is for the governing body to exercise its discretion. Were there no such discretion, and the governing body limited to the statutory requirements, then "such a public hearing would be meaningless." *Randall's,* 81 S.D. at 288, 134 N.W.2d at 300. *See also Hendriks v. Anderson* 522 N.W.2d 499 (S.D.1994)(no abuse of discretion in refusal of license where city council concluded applicant did not possess an adequate building to operate the business).

---

6. The history of the license itself gave the council nothing to review. The license issued by Tripp County had never been used by a functioning bar except on one occasion when Hanig apparently sold a case of beer to friends.

7. At this point, Hanig cannot fault the city's handling of the building permit application. He filed the application on January 6, 2003, the same date as the hearing on the liquor license. His plans were deemed "incomplete and inadequate" by the city official who reviewed the application (attached as Appendix A to this writing).

[¶ 43.] At the hearing, Hanig was allowed to present any evidence he wished in support of his license renewal. Moreover, Hanig's own testimony supports the correctness of the council's decision on the application:

Q. Okay, Is it your understanding today that the reason the City Council voted to deny your application was that they didn't feel you had presented adequate building plans or business plans to them?

\* \* \*

A. That is my understanding, yes.

Q. Do you have any reason to believe the City Council isn't being truthful about that?

A. I believe they are being truthful.

Q. You believe they are being truthful. Okay. You just disagree with the decision made; correct?

A. Correct.

That position is once again conceded in Hanig's appellate brief where he states, "[t]o be blunt, Hanig does not possess any direct evidence to prove pretext." [8]

[¶ 44.] Perhaps my strongest disagreement with the opinion of the Court is in its determination that citizen communication with the remaining five council members constituted an "indirect personal interest" which tainted their vote. This license application clearly was an important and controversial request within the City of Winner. Opposition to it at the council hearing ran the gamut from the Winner Ministerial Association to the Winner "liquor industry." What of the First Amendment which guarantees citizens the right of petitioning their public officials? Are phone calls, personal contact and letters to officials now tainted? What about indirect contact such as letters to the local newspaper? Are citizens now effectively silenced unless they personally appear at the meeting to voice their objections? " 'Whatever differences may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs.' " *State v. Springer–Ertl*, 2000 SD 56, ¶ 11, 610 N.W.2d 768, 771 (citing *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 838, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1, 10 (1978) (quoting *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1437, 16 L.Ed.2d 484, 488 (1966))).

[¶ 45.] In conclusion, " '[t]he Twenty-first Amendment grants the States virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system[.]' " *South Dakota v. Dole*, 483 U.S. 203, 205, 107 S.Ct. 2793, 2795, 97 L.Ed.2d 171, 177 (1987) (quoting *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.*, 445 U.S. 97, 110, 100 S.Ct. 937, 946, 63 L.Ed.2d 233, 246 (1980)). The South Dakota Legislature exercised that constitutional power by granting very broad discretion to the licensing authority, in this case the City of Winner. The city's decision to annex the property did not result in a forfeiture of its discretion to approve or disapprove this liquor license application under SDCL 35–2–1.2. The city was mandated by state law to review the appropriateness of Hanig's application un-

---

8. If the council had undisclosed reasons to deny the license, as Hanig claims, he fails to explain why the city approved the annexation of his property in the first place knowing that he possessed a county liquor license and that, in the future, he would look to the city to renew it. Without that annexation, there could have been no issues over the city building permit and the city liquor license.

der South Dakota's statutes, not those of some other jurisdiction. The disqualified councilwoman aside, there were still five votes to deny the application on the basis of an inadequate place in which to do business. This was not an abuse of discretion. No writ should issue. Therefore, I would affirm the circuit court and respectfully dissent from this Court's conclusion otherwise.

# APPENDIX A

  CITY OF WINNER

APPLICATION FOR BUILDING PERMIT    NO 2003·002

Property Information                                    Phone _____
Owner _Tony HANIg_____            __X__ Commercial
Address _____            _____ Residential
Legal Description _Lot 1 of Mathis Highway_
_44, Tract 3 Add in SE 1/4 of Sec 21, T99N, 76W, SEPM, Tripp Co. Winner_
                                                                    SA

Type of New Improvement                    Description and Proposed Use
_X_ New Building
_____ Addition              _Restaurant & Lounge_____
_____ Re-model              _____
_____ Demolition            _____
_____ Fence/Wall            _____
_____ Other

Existing Zoning: A-1, R-1, R-2, R-3, (C-1), C-2 I-1, Special Airport (Circle One)

List All Contractors
        _Self_____
_____

Estimated Cost of Project              Check Utilities Affected

| | | | |
|---|---|---|---|
| Building & Foundation | 50,600.00 | Electrical | X |
| Electrical | 15,000.00 | Sewer | X |
| Mechanical | 5,000.00 | Water | X |
| Plumbing | 12,000.00 | Propane | |
| Other | 4,000.00 | Fuel Oil | |
| Total | 86,000.00 | Septic | |
| | | Other | |

Submit drawing, plans, sketches, show dimensions, utilities, as many details as you can so the City Inspector can determine the extent of the project. The more information, the sooner the permit will be issued.

DO NOT begin work until you have the building permit. This may take several days depending on the size of the project and the information you submit. If we are unable to determine all of the life/safety code requirements, you may be asked to submit additional information.

Date Filed: _1-6-03_____    Permit Fee _$172 ⁰⁰_    #656⑥

This is an application only, do not begin work until permit is issued.

Signature of Applicant _Tony Hanig_____
Approval Process (For office use only)
Building Classification    A B E F H I M R S U
Construction Type    I II III IV V
Plans Review Approval _Rejected, /Boden_____    Date _1-7-03_
Electrical Dept Approval _____    Date _____
Sewer / Water Review _____    Date _____
Comments: _SUBMIT COMPLETE PLANS AND SPECIFICATIONS, INCLUDING_
_PLOT PLAN, ELEC, MECHANICAL, & PLUMBING, PARKING SPACES_
_INCLUDING HANDICAP, FOUNDATION, etc._____
Cost Review / Permit Fee $_____
Planning & Zoning Review _____ Date _____
Date Permit Issued _____

WBD - 2

**EXHIBIT 9**

64

EXHIBIT
Hanig
2
10-2-03  cw

# APPENDIX A

